JOURNAL ENTRY and OPINION
{¶ 1} In a case in which the victim was appellant's young step-daughter, defendant-appellant Robert Russell appeals from his convictions after a jury trial on charges of rape, attempted rape, felonious sexual penetration, and gross sexual imposition, all with furthermore clauses, and kidnapping.
 {¶ 2} Appellant challenges his convictions on several grounds. He asserts his constitutional right to a speedy trial was violated by the state's delay in indicting him. He also asserts the trial court committed error in: 1) permitting the jurors to ask questions of the witnesses; 2) admitting evidence that he years earlier engaged in sexual improprieties against his other young daughters; 3) permitting the state to present a witness who was a "surprise" to the defense; and, 4) because they were "allied offenses," convicting him of the kidnapping counts. He further claims his trial counsel provided constitutionally ineffective assistance.
 {¶ 3} Following a review of the record, however, this court cannot agree with any of appellant's challenges. His convictions, consequently, are affirmed.
 {¶ 4} Appellant's convictions result from his relationship with his step-daughter, who will be referred to in this opinion as "S." Appellant, who had been married and divorced twice previously and who had six children of his own, married S's mother in late July 1987, two weeks after S's tenth birthday. S and her mother thereupon moved into appellant's North Royalton home with him.
 {¶ 5} According to S, approximately two months later, a few times a week, appellant began to offer to take her mother's place at bedtime. S had a bedtime routine in which, after she had gone to her room, put on her nightclothes, and climbed into bed, her mother would come into the room, and, occasionally, rub her back through the nightclothes before S went to sleep. Therefore, S was unsurprised when appellant, too, began to do so.
 {¶ 6} Within a few months, however, appellant's "backrubs" became increasingly more elaborate. First, he placed his hands under her nightclothes and onto her skin when rubbing her back. Next, he told S to turn over so he could rub her "stomach;" his hands, however, soon wandered over her pubic area and her breast area as well as her stomach. Eventually, appellant's "backrubs" reached the point at which he was touching S's skin in front as well as her back and rubbing his hands over her breast and pubic areas. Finally, upon gaining access to S's pubic area, appellant placed his fingers inside her vagina. He did this "well over five times."
 {¶ 7} S testified appellant's activities with her occurred "more frequently as time went on." By the time she was eleven years old, he asked her to keep him company in the living room as he watched pornographic movies. Soon he began "pecking" her on the mouth, which led to "kissing" her with "his tongue in [her] mouth."
 {¶ 8} S testified that one time, near the end of one of the movies, appellant pulled on her arm and demanded she sit on his lap. Her resistance to this suggestion failed to deter him. Appellant got to his feet, removed his pants and underwear, dragged her up, removed her lower clothing, and sat back down on the couch, pulling her, face forward, onto his lap. She testified appellant "tried to have sexual intercourse" with her, but was unable to penetrate her, because she "was way too small" for a grown man and she was pushing and struggling against him. S broke away from his grip, ran to the bathroom, and locked herself inside for several hours.
 {¶ 9} Since appellant was unable to satisfy himself in that manner, S testified that, twice, after a "backrub," he demanded she let him "feel his penis in [her] mouth." She refused to comply, so he put "his hands on the back of [her] head and forced himself inside [her] mouth by pushing [her] head toward his pubic area;" he pried her mouth open by placing his thumb into the side, near her jaw.
 {¶ 10} S indicated these episodes ceased when she turned twelve. She had by that time begun to resist appellant's advances more strenuously, even biting him on his cheek on one occasion. Appellant told S's mother that the injury was from an accident with a hand weight he had been using.
 {¶ 11} Moreover, her mother and appellant had decided to do some traveling, so they left S with her maternal grandparents for a year. The following summer, just before S turned fourteen, she returned to appellant's house in North Royalton, but soon left again to attend an out-of-state school.
 {¶ 12} The family moved to the city of Wooster during S's high school years. One afternoon in 1995, following an argument with her mother, S arrived at her place of employment with a black eye. Suspecting child abuse had occurred, her co-workers telephoned the police.
 {¶ 13} The family briefly was investigated. For the first time, S mentioned to a police officer that appellant "touched" her in an inappropriate manner. However, S's allegations against appellant could not be corroborated, S moved out of the home to live with her father, and the others in the family moved back to North Royalton. Thus, the matter languished. During 1997, S's mother and appellant went through a divorce; the issue of possible parental child abuse of S, who was by then twenty years old, was raised, but, again, came to no result.
 {¶ 14} In late 2002, North Royalton Police detective David Loeding met with appellant's sister; she had complaints about the stalled investigation of her brother. Using information given to him by appellant's sister, Loeding contacted appellant's natural daughters. He spoke with thirty-year old E, and twenty-eight year old R. He then took the results of his supplemented investigation to the county prosecutor's office.
 {¶ 15} In January 2003, the Cuyahoga County Grand Jury issued a sixteen-count indictment against appellant for his actions with S that took place from July 1987 through July 1989. Appellant was charged with two counts of forcible rape, one count of attempted forcible rape, and five counts of forcible felonious sexual penetration, all of a minor under the age of thirteen. Appellant also was charged with five counts of gross sexual imposition upon a minor under the age of thirteen, and three counts of kidnapping for the purpose of engaging in sexual activity.
 {¶ 16} Appellant's case proceeded to a jury trial. The state presented the testimony of S, her two older half-sisters, her mother, her childhood friend in whom at the age of eleven she had confided appellant's actions, Loeding, and two other police officers involved in the investigation. Appellant testified in his own defense.
 {¶ 17} The jury ultimately found appellant guilty of all the charges against him. After he was sentenced by the trial court, appellant filed this appeal of his convictions. He presents six assignments of error, which will be addressed in logical order.
 {¶ 18} Appellant's second assignment of error states:
 {¶ 19} "II. Robert Russell has been denied of his liberty without due process of law by his convictions in the case at bar, as the State of Ohio lacked jurisdiction to bring him to trial in violation of his constitutional right to a speedy trial."
 {¶ 20} Appellant argues the state's delay in indicting him in this case constitutionally was unreasonable, since it became aware of S's allegations in 1995 but failed to issue the indictment until January 2003. Appellant's argument lacks merit.
 {¶ 21} The constitutional right to a speedy trial "has no applicability to pre-indictment delays, United States v. Marion
(1971), 404 U.S. 307." State v. Luck (1984), 15 Ohio St.3d 150,153. Since appellant herein was "not subject to any prosecution for these particular offenses before the issuance of the indictment," and the issuance of the indictment fell within the applicable statute of limitations, his constitutional right to a speedy trial was not compromised." State v. Hill (June 17, 1993), Cuyahoga App. No. 62791. See also, State v. Fallat,
Cuyahoga App. No. 81073, 2003-Ohio-169.
 {¶ 22} With regard to appellant's claim of denial of due process as a result of pre-indictment delay, appellant must demonstrate he suffered from the delay "actual prejudice," such as to violate "fundamental concepts of justice." State v. Luck,
supra at 159. Mere "general conclusions * * * are insufficient to establish actual prejudice." State v. Hill, supra. Appellant herein, however, offers not even a suggestion he suffered any prejudice from the delay in his indictment.
 {¶ 23} Accordingly, appellant's second assignment of error is overruled.
 {¶ 24} Appellant's fourth assignment of error states:
 {¶ 25} "IV. Robert Russell was denied his due process rights to a fair trial when the trial court permitted [the testimony of] a witness whose name had not been disclosed to the defense during discovery."
 {¶ 26} Appellant argues the effectiveness of the presentation of his defense was compromised by the trial court's refusal to prohibit the testimony of S's childhood friend. At trial, appellant argued this witness was a "surprise" because, in the state's list of witnesses, she had been referred to by her maiden rather than her married name. Appellant contends the admission of the evidence violated Crim.R 16(B)(1) and thus unfairly prevented him from presenting a competent defense to evidence which was corroborative of the victim's testimony. Appellant's contention lacks merit.
 {¶ 27} The trial court is vested with the option of determining the best course when a discovery violation is asserted. State v. Parson (1983), 6 Ohio St.3d 442. Naturally, grounds for imposing a sanction do not exist if no discovery violation occurred.
 {¶ 28} The record reflects appellant had been given the name of this witness prior to trial. It further reflects that appellant knew from S's written statements that she had told a childhood friend whose first name was Jennifer of appellant's actions at the time they were occurring. This witness was the only "Jennifer" named on the state's witness list.
 {¶ 29} Based upon these facts, appellant cannot demonstrate either that the prosecutor failed to disclose the evidence or that appellant had no foreknowledge of it. State v. Scudder
(1994), 71 Ohio St.3d 263, 269. This latter conclusion is supported by the additional fact that appellant did not consider it necessary to request a continuance to better prepare for the witness' testimony. The admission of the evidence, therefore, could not have prejudiced his defense. See, e.g., State v.Braxton (1995), 102 Ohio App.3d 28.
 {¶ 30} For the foregoing reasons, the trial court committed no error in allowing the witness' testimony. Appellant's fourth assignment of error also is overruled.
 {¶ 31} Appellant's first assignment of error states:
 {¶ 32} "I. Robert Russell was denied his constitutional right to a fair and unbiased jury by the repeated introduction of prejudicial other acts evidence in the state's case in chief."
 {¶ 33} Citing the "shield" statutes of R.C. 2907.02(D) and R.C. 2907.05(D), the first sentence of Evid.R. 404(B), and Evid.R. 608(B), appellant argues the trial court improperly failed to prohibit the state from introducing into evidence two types of damaging testimony: first, that he sexually abused his natural daughters when they were children; and, second, that he took advantage of his elderly mother and wasted all the property that would have been included in her estate.
 {¶ 34} The admission or exclusion of evidence, however, is a matter left within the trial court's sound discretion. State v.Green, 90 Ohio St.3d 352, 2000-Ohio-182. The record reveals the trial court did not abuse its discretion.
 {¶ 35} R.C. 2945.59 and the second sentence of Evid.R. 404(B) allow evidence of other criminal behavior of the defendant so long as the evidence is used for a strictly limited purpose.State v. Broom (1988), 40 Ohio St.3d 277. One of the limited purposes for which the evidence may be introduced is to prove the defendant's "system in doing an act."
 {¶ 36} In this case, the trial court properly permitted appellant's daughters to testify pursuant to the foregoing provisions. The state's position was that appellant used the same modus operandi, or "pattern of conduct," in his crimes. State v.Ervin, Cuyahoga App. No. 80473, 2002-Ohio-4093; State v.Murphy (July 30, 1998), Cuyahoga App. No. 71775.
 {¶ 37} The state proved appellant chose female victims of a filial position to him who were under the age of twelve. Appellant began touching his victims in a progressively sexual manner. When he became sure he could do so, he then sexually gratified himself, also in a progressive manner. He initially forced his penis against his eldest daughter's bare skin. He eventually forced his penis into his younger daughter's vagina. Since he could not accomplish actual sexual intercourse with S, he settled with forcing his penis into her mouth.
 {¶ 38} On the record, therefore, "the probative value of the evidence was not substantially outweighed by the possibility of unfair prejudice." State v. Ervin, at *P.52. Therefore, the trial court did not err in admitting appellant's daughters' testimony.
 {¶ 39} Moreover, prior to the testimony of each of appellant's daughters, the trial court carefully instructed the jury on the limited use of this evidence. During the final jury instructions, the caution was repeated for a third time. The trial court clearly did not abuse its discretion in this matter.State v. Murphy, supra.
 {¶ 40} Similarly, the trial court acted within its discretion in permitting the prosecutor to cross-examine appellant in regard to the statements he made about his business successes and his sister's reasons for approaching the police. Appellant had testified he had no need for his mother's money, and, thus, his sister had been motivated only by vindictiveness, believing falsely she had been excluded from sharing in their mother's estate. Appellant's character for truthfulness in business and estate matters, therefore, properly was a subject for challenge. Evid.R. 608(B).
 {¶ 41} Accordingly, appellant's first assignment of error also is overruled.
 {¶ 42} Appellant's sixth assignment of error states:
 {¶ 43} "VI. The trial court erred and denied Robert Russell his constitutional right to a fair and impartial jury, when it permitted the jury to ask the witnesses questions."
 {¶ 44} Appellant argues this court should refuse to accept the authority of the Ohio Supreme Court's decision in State v.Fisher, 99 Ohio St.3d 127, 2003-Ohio-2761, and determine the practice used by the trial court herein, viz., that of allowing jurors to question witnesses, in itself constitutes reversible error. This court declines to do so.
 {¶ 45} The record of this case reveals the trial court fully complied with each procedural requirement set forth in Fisher.State v. Shine, Cuyahoga App. No. 81975, 2003-Ohio-7238. Under these circumstances, appellant's sixth assignment of error lacks merit; it, therefore, is overruled.
 {¶ 46} Appellant's third assignment of error states:
 {¶ 47} "III. Robert Russell has been deprived of his constitutional right not to be put in jeopardy two times for the same offense by his convictions for kidnapping in the case at bar, as said convictions are allied offenses of similar import to other crimes for which Mr. Russell was also convicted."
 {¶ 48} Appellant argues that his three convictions for kidnapping were improper pursuant to R.C. 2941.25(A), since they corresponded to his convictions on the two counts of rape and the count of attempted rape.
 {¶ 49} The record reflects appellant, however, never raised the issue of merger of offenses in the trial court. Consequently, he has waived the issue for the purpose of appeal. State v.Smith, 80 Ohio St.3d 89, 118, 1997-Ohio-355; State v. Williams
(1977), 51 Ohio St.2d 112.
 {¶ 50} Appellant's fifth assignment of error states:
 {¶ 51} "V. Robert Russell was denied his constitutional right to effective assistance of counsel by the numerous instances in which counsel's representation fell below any objective level of competence."
 {¶ 52} Appellant argues the trial counsel he retained provided constitutionally ineffective assistance in his defense. This court disagrees.
 {¶ 53} The claim of ineffective assistance of counsel requires proof that "counsel's performance has fallen below an objective standard of reasonable representation" and, additionally, that prejudice arises from counsel's performance.State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus; see, also, State v. Lytle (1976),48 Ohio St.2d 391. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different."State v. Bradley, supra, paragraph three of the syllabus.
 {¶ 54} The burden is on defendant to prove ineffectiveness of counsel. State v. Smith (1985), 17 Ohio St.3d 98. As appellant acknowledges in his argument with respect to this assignment of error, trial counsel is strongly presumed to have rendered adequate assistance. Id., see, also, Vaughn v. Maxwell (1965),2 Ohio St.2d 299. Moreover, this court will not second-guess what could be considered to be a matter of trial strategy. Id.
 {¶ 55} The record with regard to trial counsel's actions in this case fails to demonstrate counsel's performance fell below an objective standard of reasonableness.
 {¶ 56} Appellant initially contends some of counsel's questions of R during cross-examination were "devastating" to his defense and "virtually insured" his convictions. Counsel asked R how she could profess to "love" appellant now when she claimed he committed heinous acts upon her when she was a little girl. R responded that she believed appellant was "sick" and "a sexual predator," but that "he's [her] dad."
 {¶ 57} This court cannot fault defense counsel for the exchange. State v. Hoffner, 102 Ohio St.3d 358, 2004-Ohio-3430, P.*45. Clearly, he sought to challenge R's direct testimony by pointing out to the jury that her feelings were contradictory at best, and, therefore, incredible to a person of ordinary sensibilities.
 {¶ 58} Appellant further contends counsel failed numerous times to object and thus to preserve potential issues for appeal. He bases his contention, however, on several issues he has raised in the instant appeal that now have been considered and rejected by this court. Since none of the issues appellant cites had any merit, his contention lacks persuasiveness.
 {¶ 59} The only arguable issue actually waived by defense counsel was the one appellant raised in his third assignment of error, viz., that of whether his convictions for kidnapping should have been merged with his convictions for rape and attempted rape. However, especially in cases that involved a minor victim, this court previously has rejected such an argument. See, e.g., State v. Murphy, supra, cited by State v.Mader (Aug. 30, 2001), Cuyahoga App. No. 78200; cf., State v.Rodrigues, Cuyahoga App. No. 80610, 2003-Ohio-1334.
 {¶ 60} The record of this case reveals defense counsel was a well-prepared and zealous advocate for his client in the face of overwhelming guilt. Failure to raise issues in the trial court that were of questionable merit cannot be deemed at this juncture to constitute ineffective assistance. Counsel could have decided as matter of trial strategy to be considerate of both the jury's and the court's patience. State v. Mayes, Cuyahoga App. No. 82592, 2004-Ohio-2014.
 {¶ 61} Appellant cannot, therefore, demonstrate his trial counsel provided constitutionally ineffective assistance. Consequently, his fifth assignment of error also is overruled.
 {¶ 62} Appellant's convictions are affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, A.J. and Celebrezze, Jr., J. Concur.