[Cite as *State v. Williams*, 195 Ohio App.3d 807, 2011-Ohio-5650.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
EN BANC
No. 94965

---

## THE STATE OF OHIO,

APPELLEE,

v.

## WILLIAMS,

APPELLANT.

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-525486

**BEFORE**: En Banc Court

**RELEASED AND JOURNALIZED:** November 3, 2011

William D. Mason , Cuyahoga County Prosecuting Attorney, and Richard J. Bombik, Assistant Prosecuting Attorney, for appellee.

Craig T. Weintraub, for appellant.

LARRY A. JONES, Judge.

**{¶ 1}** Pursuant to App.R. 26 and Loc.App.R. 26, this court determined that a conflict existed among this court's decisions on the question of whether evidence of other similar acts is admissible pursuant to Evid.R. 404(B) to demonstrate a scheme, plan, or system when the evidence is not part of the immediate background of the present crime and the offender's identity is not at issue. Accordingly, we granted en banc consideration in this matter sua sponte and convened an en banc conference in accordance with *McFadden v. Cleveland State Univ.*, 120 Ohio St.3d 54, 2008-Ohio-4914, 896 N.E.2d 672, on this question.

**{¶ 2}** In the case at bar, defendant-appellant, Van Williams, appeals his convictions for rape, unlawful sexual conduct with a minor, kidnapping, and gross sexual imposition. For the reasons that follow, we reverse and remand for a new trial.

**{¶ 3}** There is perhaps no more muddled area of evidence law than that surrounding Evid.R. 404(B) and its application to crimes of sexual assault. Through our review of Ohio and, in particular, this district's case law on the subject, we have found cases that have applied the evidence rule in different and conflicting ways. While we are not at this time going to attempt to define each exception to the common-law rule prohibiting the admission of character evidence, we will attempt to define a path through the quagmire surrounding the issues that apply to the case at bar, that is, the Evid.R. 404(B) exceptions for other acts-evidence to prove "intent" or a "scheme, plan, or system."

Procedural History and Facts

**{¶ 4}** In 2009, Williams was charged in a 61-count indictment with 12 counts of rape, 12 counts of unlawful sexual conduct with a minor, 12 counts of kidnapping, 24 counts of gross sexual imposition, and one count of intimidation of a crime victim or witness. All criminal activity was alleged to have occurred between November 1, 2008, and April 30, 2009, when the victim, "J.H.," was 14 and 15 years old.[1]

**{¶ 5}** Prior to trial, the state filed a motion to admit evidence pursuant to Evid.R. 404(B) and R.C. 2945.59," indicating that it intended to admit into evidence prior allegations of sexual abuse committed by Williams against a teenage boy, "A.B." Williams filed a brief in opposition to the state's motion and requested an evidentiary hearing.

**{¶ 6}** On February 16, 2010, the day that trial was to commence, Williams's attorney again asked for a hearing on the Evid.R. 404(B) motion. He explained to the court that he thought his client would be prejudiced if the decision on the admission of the Evid.R. 404(B) evidence was further delayed. The trial court denied the request and began voir dire. The next day, defense counsel filed a motion in limine asking the trial court to prohibit any Evid.R. 404(B) testimony, again requesting an evidentiary hearing. In court, defense counsel asked the trial court to rule on his motion before opening statements. The trial court denied counsel's request to rule on the motion before opening statements, and trial commenced.

**{¶ 7}** J.H.'s grandmother testified that she had custody of J.H. They belonged to the same church as Williams, and once J.H. joined the men's choir, Williams began to mentor

---

[1]The victim in this case is referred to by his initials in accordance with this court's longstanding policy to not identify juveniles or victims in sexual-assault cases.

him, since her grandson did not otherwise have a "male role model" in his life. The grandmother testified that Williams took J.H. various places, including to get his hair cut, to shop for video games, to see movies, and to see J.H.'s friends. She testified that Williams was constantly buying J.H. gifts, such as video games, clothes, shoes, a guitar, and guitar lessons, and he also gave J.H. money to do odd jobs around his house.

{¶ 8} Michael Tessler testified that he worked at J.H.'s school. During a May 2009 counseling session, J.H. disclosed to Tessler that a man at his church had been molesting him. Tessler reported the allegations to the Cuyahoga County Department of Children and Family Services ("CCDCFS").

{¶ 9} After Tessler testified, the trial court excused the jury and began the Evid.R. 404(B) hearing. A.B. took the witness stand, testified, and was subject to cross-examination. A.B. testified that when he was 16 years old, he attended a local high school where Williams served as the swim coach. A.B. was not close to his own father, but he joined the swim team and developed a close relationship with Williams. In 1997, after a swim meet at a high school in Perry, Ohio, Williams took A.B. behind that school's concession stand, kissed A.B., and fondled him. When the team returned to its school later that night, he and Williams engaged in oral sex in the locker room. He testified that although he and Williams never engaged in anal intercourse, they engaged in oral sex two to three times per week in the school's locker room and that activity lasted until the end of the school year. He further testified that the sexual activity was consensual. After A.B.'s testimony, the trial court continued the evidentiary hearing at Williams's request because he had a witness to rebut

5

A.B.'s testimony.

{¶ 10} The trial court resumed the jury trial. J.H.'s mother was the next witness to testify in the state's case-in-chief. She testified that she had a drug problem when her son was young, so she had sent J.H. to live with his grandmother. She testified that Williams was the only influential male figure in her son's life.

{¶ 11} J.H., who was 16 years old at the time of trial, testified that he had developed a close relationship with Williams after joining the men's choir at church. He testified that Williams would often pick him up and take J.H. to his house. Williams bought him gifts, including a watch, clothing, and a guitar.

{¶ 12} J.H. testified that over time, Williams became someone that he completely trusted. But Williams eventually began to molest him. The first incident occurred in September 2008, when J.H. was 14 years old. J.H. testified he was sitting on a bed in Williams's house, and the older man began to massage J.H.'s back. Williams then massaged his legs and "groin area." Williams told J.H. not to tell anyone because Williams could go to jail.

{¶ 13} The next incident occurred later the same month. Williams massaged J.H.'s back and groin area. The next incident occurred in Williams's basement when Williams was giving J.H. a haircut. J.H. testified that during the haircut, Williams put the clippers down, began to massage J.H.'s back, pulled J.H.'s pants down and bent him forward, and then "[stuck] his private part in [J.H.'s] behind." When he was "done," J.H. explained, Williams got a cold rag and wiped J.H.'s buttocks. J.H. testified that the sexual intercourse hurt.

6

{¶ 14} The next act of anal intercourse occurred in Williams's bedroom and was also preceded by Williams massaging J.H.'s back and groin area. This time, when Williams touched J.H.'s penis, J.H. asked him why he was doing so. Williams replied that "he wasn't getting any from his wife." During this incident, Williams abruptly stopped the intercourse, thinking his wife was coming home. When Williams realized they were still alone, he took J.H. to the basement and resumed anal intercourse. J.H. testified Williams told him he would stop "doing this to [him]" before J.H. turned 15 years old.

{¶ 15} Then next time Williams assaulted him, Williams used Vaseline on his (Williams's) penis. J.H. testified that the last assault happened in January 2009 when he was 15 years old, in the computer room at Williams's house.

{¶ 16} J.H. testified that he was confused as to whether sexual activity was something boys were supposed to do with older men. He stated he did not put up much resistance because he was afraid Williams would hurt him.

{¶ 17} Shawana Cornell, a CCDCFS social worker, testified that she was assigned to J.H.'s case after the county received a report that J.H. had been sexually abused. The state inquired about the conversation she had had with Williams as part of her investigation. Cornell testified, over defense counsel's objection, that Williams "said he was accused of this about 12 years ago, and that the charge was taken down to a misdemeanor assault." During a subsequent conversation with Williams, Cornell testified that she had asked Williams "if he would mind telling [her] about the allegation from 12 years ago with the other boy, and [he] did not want to tell [her] about that." Cornell testified that Williams denied any sexual

activity occurred with J.H. and did not know why the boy would make such an allegation.

{¶ 18} After Cornell testified, defense counsel asked for a mistrial, arguing that his client had been unduly prejudiced by the social worker's testimony, especially since the trial court had not yet made a ruling on the state's Evid.R. 404(B) motion. The trial court denied the motion for a mistrial.

{¶ 19} The trial court then resumed the Evid.R. 404(B) hearing. Williams called Terrance Gaither, an assistant swim coach at A.B.'s high school, to testify. Gaither testified that he had been an assistant swim coach when A.B. was on the swim team. He stated that after the swim meet in Perry, the team immediately left to go back to its school. He and Williams drove some students home and then went out to clubs in the Flats district of Cleveland. He stated that Williams was well liked and no other students had ever made any allegations against him.

{¶ 20} After Gaither's testimony, the trial court heard arguments from both parties on the state's Evid.R. 404(B) motion. The state argued that A.B.'s testimony should be admitted into evidence because it tended to show Williams's intent in committing sexual acts with J.H. and because it showed his scheme or plan to mentor young boys who did not have strong male role models in their lives, gain their trust, and then groom them to be his victims.

{¶ 21} The trial court granted the state's motion, finding that the evidence should be admitted to show Williams's "intent." The trial court based its reasoning as follows:

> Intent is the strongest one. The sexual gratification of the [d]efendant, with respect to his acts with [J.H.], which so far there is just some inferences there could be some sexual gratification, it becomes much more clear when you hear the testimony

8

of [A.B.] with respect to their conduct together. Certainly [A.B.'s] testimony indicated that this [d]efendant was sexually gratified by that conduct. I don't know for what other purpose you make out with somebody for; oral sex, mutual masturbation. There is really no other purpose for that.

Although there was no testimony from [J.H.] about other sex, in fact, I believe [defense counsel] brought out on cross-examination of the social worker [J.H.] told her that he, the [d]efendant, wanted oral sex but [J.H.] wouldn't let him. So that evidence is out there as well. As well as opening statements, which defense counsel made clear to jurors that * * * Mr. Williams['s] sexual preference was not in question at all. It was directly in opening statement as well as what was brought out from the social worker's testimony with respect to he is not attracted to males.

So [A.B.'s] testimony directly rebuts that. And if that is the defense that the Defense is putting before these jurors, then the State has a right to rebut that and show with other acts that his intent in these acts with [J.H.] were for his sexual gratification. And it goes to his motive as well. I think that is a proper purpose.

The probative value in this case, because of the nature of the defense proposed by the Defense, is it's highly probative. I think in this case it will outweigh any potential for unfair prejudice than the Defense is going to put on a witness that will cast into doubt when [A.B.] says as, well, if there is substantial evidence that the crime occurred. * * * I think it's proper for the jurors to hear that.

{¶ 22} Defense counsel again asked for a mistrial, citing the prejudice to his client in commencing trial prior to the court ruling on the Evid.R. 404(B) motion. The trial court denied the motion, and A.B. took the stand to testify before the jury. His testimony was substantially the same as the testimony he gave during the motion hearing.

{¶ 23} After A.B. testified, Williams moved for acquittal pursuant to Crim.R. 29. The trial court dismissed Counts 6-12 (rape), 18-24 (unlawful sexual conduct with a minor), 32-36 (kidnapping), and 43-61 (gross sexual imposition).

{¶ 24} Terrance Gaither was the first defense witness to testify in front of the jury, and his testimony was substantially the same as his testimony during the motion hearing.

9

{¶ 25} Antoine Abrams testified that he was a former student of Williams. He grew up with the Williams family, Williams was a father figure to him, and Williams helped ensure that other neighborhood children stayed out of trouble. Abrams testified that Williams was a selfless role model and helped the Abrams family pay for field trips.

{¶ 26} Robert Moss testified that he sang in the men's choir with J.H. and Williams. Moss believed that J.H. was a troubled teenager.

{¶ 27} Charles Bell testified that he knew Williams for 23 years and cut his hair. Williams took J.H. to Bell's home for haircuts on three or four occasions. Regina Williams testified that she was married to Williams, who often mentored troubled boys. She stated that she was often at home during the time of the alleged abuse. She testified on cross-examination that she did not trust J.H. but did not believe that J.H. was a "bad kid."

{¶ 28} The jury returned a guilty verdict as to six counts of gross sexual imposition, seven counts of kidnapping, five counts of rape, and five counts of unlawful sexual conduct with a minor. The trial court subsequently sentenced Williams to 20 years in prison.

{¶ 29} On appeal, Williams raises six assignments of error (see appendix). In his first assignment of error, Williams sets forth the following proposition:

{¶ 30} "I. Appellant was denied his constitutional rights to a fair trial because the trial court erred by admitting highly prejudicial evidence and by not complying with Ohio Evidence Rule 403."

### Standard of Review

{¶ 31} We review the admission of evidence under an abuse-of-discretion standard.

*State v. Maurer* (1984), 15 Ohio St.3d 239, 264, 473 N.E.2d 768.[2]  "Abuse of discretion" connotes more than error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

<u>Other-Acts Evidence in Sexual-Assault Cases</u>

{¶ 32} The Ohio legislature has recognized the problems raised by the admission of other-acts evidence in prosecutions for sexual offenses and has carefully limited the circumstances in which evidence of the defendant's other sexual activity is admissible.  *State v. Schaim* (1992), 65 Ohio St.3d 51, 59, 600 N.E.2d 661.  Consequently, R.C. 2907.02(D), which governs the crime of rape, and 2907.05(E), which governs gross sexual imposition, both provide, "Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."  Id.[3]

{¶ 33} Because of the severe social stigma attached to crimes of sexual assault and

---

[2] The standard of review with regard to the admission of other-acts evidence is currently pending before the Ohio Supreme Court.  *State v. Morris*, 128 Ohio St.3d 1448 2011-Ohio-1618, 944 N.E.2d 697.  In *State v. Morris,* Medina App. No. 09CA0022-M, 2010-Ohio-5973, the Ninth District Court of Appeals determined that a de novo standard of review should apply to other-acts-evidence issues.

[3] No enumerated basis for admission applies to the case at bar other than the exceptions listed in R.C. 2945.59.

child molestation, evidence of the past sexually related acts of a defendant poses a higher risk, on the whole, of influencing the jury to punish the defendant for the similar act rather than the charged act. *State v. Miley*, Richland App. Nos. 2005-CA-67 and 2006-CA-14, 2006-Ohio-4670.

Evid.R. 404(B) and R.C. 2945.59

{¶ 34} Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove" a defendant's character as to criminal propensity. "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id.

{¶ 35} Evid.R. 404(B) is codified in R.C. 2945.59, which provides, "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."[4]

{¶ 36} Because R.C. 2945.59 and Evid.R. 404(B) carve out exceptions to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict. *State*

---

[4]We note that the statute and the rule are not identical; R.C. 2945.59 predates the evidence rule and requires that the evidence be relevant to an issue that is material to the case. Evid.R. 404(B), on the other hand, does not require materiality, although materiality is generally required for evidence to be admissible. See Evid.R. 401 and 402.

*v. Broom* (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, paragraph one of the syllabus. Consequently, any analysis under this rule must begin with the assumption that the evidence that the moving party wishes to admit is inadmissible, and that party must demonstrate its admissibility. But neither R.C. 2945.59 nor Evid.R. 404(B) " 'requires that the other act be "like" or "similar" to the crime charged, as long as the prior act tends to show one of the enumerated factors.' " *State v. Crotts*, 104 Ohio St.3d 432, 435, 2004-Ohio-6550, 820 N.E.2d 302, quoting *State v. Shedrick* (1991), 61 Ohio St.3d 331, 337, 574 N.E.2d 1065.

{¶ 37} Courts have long recognized the danger of admitting other-acts evidence. In *United States v. Phillips* (1979), 599 F.2d 134, 136, the Sixth Circuit Court of Appeals stated as follows: "Two concerns are expressed by the first sentence of [Fed.R.Evid.] 404(b): (1) that the jury may convict a 'bad man' who deserves to be punished — not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes, he probably committed the crime charged." As cautioned by the Ohio Supreme Court in *State v. Lowe* (1994), 69 Ohio St.3d 527, 634 N.E.2d 616, "we therefore must be careful * * * to recognize the distinction between evidence which shows that a defendant is the *type* of person who might commit a particular crime and evidence which shows that a defendant *is* the person who committed a particular crime." (Emphasis sic.) Id. at 530. This danger is particularly high when the other acts are very similar to the charged offense, or of an inflammatory nature, as in the case at bar. See *Schaim*, 65 Ohio St.3d at 60.

{¶ 38} The United States Supreme Court has set forth several factors for courts to

13

consider when determining whether evidence should be admitted pursuant to Evid.R. 404(B): "(1) the other crimes evidence must have a proper purpose, (2) the proffered evidence must be relevant, (3) its probative value must outweigh its potential for unfair prejudice, and (4) the court must charge the jury to consider the other crimes evidence only for the limited purpose for which it is admitted." *State v. Gus*, Cuyahoga App. No. 85591, 2005-Ohio-6717, at ¶ 18, citing *Huddleston v. United States* (1988), 485 U.S. 681, 691, 108 S.Ct. 1496, 99 L.Ed.2d 771.

{¶ 39} Finally, pursuant to Evid.R. 403(A), even relevant evidence that is admissible under ordinary circumstances must be excluded if the probative value of the evidence is outweighed by the danger of unfair prejudice. *State v. Ben*, 185 Ohio App.3d 832, 2010-Ohio-238, 925 N.E.2d 1045, appeal not allowed by 125 Ohio St.3d 1450, 2010-Ohio-2510, 927 N.E.2d 1129, citing *State v. Chaney*, Seneca App. No. 13-05-12, 2006-Ohio-6489, at ¶ 24.

Intent

{¶ 40} Although this court realizes that the issues surrounding the admission of evidence pursuant to Evid.R. 404(B) are vast, we limit our analysis to the instant case and, therefore, to an analysis regarding the admission of other acts to demonstrate the defendant's "intent" or "scheme, plan, or system."

{¶ 41} Pursuant to Evid.R. 404(B), other-acts evidence may be admissible to prove an accused's intent in committing a crime.

{¶ 42} In *State v. Smith* (1990), 49 Ohio St.3d 137, 141, 551 N.E.2d 190, the Ohio

Supreme Court explained, "Evidence of extrinsic acts may be used to prove intent or guilty knowledge when it is a genuine issue in a case. The acts should tend to prove that the accused understood the wrongful nature of his act by virtue of the fact that he committed prior or subsequent wrongful acts." Id. The court further explained: "It is a fundamental principle of criminal law that when an accused pleads not guilty to a charge which contains 'specific intent' as an element of the crime, he places intent squarely at issue and the state is required to prove this element beyond a reasonable doubt." Id.

{¶ 43} To be convicted of rape or gross sexual imposition by force or threat of force, the state must prove that the defendant "purposely compel[led] the [victim] * * * to submit by force or threat of force." R.C. 2907.02(A)(2) and 2907.05(A)(1). A person acts purposely "when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶ 44} Generally, a defense of mere presence at the crime scene places the intent of the defendant at issue. See, e.g., *United States v. Hernandez-Guevara* (C.A.5, 1998), 162 F.3d 863, 870-871; *United States v. Moore* (C.A.8, 1996), 98 F.3d 347, 350. For example, in *State v. Ditzler* (Mar. 28, 2001), Lorain App. No. 00CA007604, the court found that evidence was properly admitted on the issue of the appellant's intent in bringing the victim to a campground and plying him with alcohol and pornography with the purpose of committing forcible rape and gross sexual imposition. See also *State v. Wagner* (May 28, 1991), 12th

15

App. No. CA90-07-049 (finding evidence of other acts admissible when appellant was charged with a violation of R.C. 2907.02(A)(2), which requires proof that he "purposely" compelled the victim to submit to sexual conduct by force or the threat of force. The court found that because the appellant had pleaded not guilty and asserted that the victim had initiated any contact, he placed the question of intent at issue).

{¶ 45} Here, the trial court allowed A.B. to testify about his past sexual relationship with Williams, finding that (1) the other-acts evidence would show that Williams's intent was sexual gratification; (2) the defense had included testimony that Williams was not attracted to males; (3) the state had a right to rebut testimony through A.B. that Williams was not attracted to males; (4) the evidence showed Williams's motive in committing the acts against J.H.; and (5) the probative value outweighed prejudice to Williams.

{¶ 46} We do not see how A.B.'s testimony could show "intent." The state argues that because the definition of sexual contact, which is an element of gross sexual imposition, includes "for the purpose of sexually arousing or gratifying either person,"[5] it carried the burden of proving that the sexual contact that occurred between Williams and J.H. was for such a purpose. Therefore, to prove that element, the state contends that A.B.'s testimony that Williams received sexual gratification from their sexual activity was introduced to show that Williams received sexual gratification from J.H. But we fail to see how Williams's consensual sexual relationship with A.B. 12 years prior to the alleged abuse of J.H. demonstrates Williams's purpose to achieve sexual gratification with J.H.

{¶ 47} We also note the trial court acted prematurely in allowing the other-acts evidence into the state's case-in-chief. Although defense counsel alluded to a possible defense that Williams was not attracted to males, the statements made by defense counsel during opening argument would not necessarily allow other acts testimony into the state's case-in-chief. If the state had wanted to use A.B.'s testimony to rebut a claim that Williams was interested only in females, the rebuttal testimony would have had to come in during cross-examination of defense witnesses. Even then, we doubt it would have been admissible, as it would be irrelevant. Evidence of homosexuality is not relevant to establish pedophilia. See *Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 12, citing *State v. Bates* (Minn.App.1993), 507 N.W.2d 847, 852.

{¶ 48} Moreover, even if the state were able to successfully argue that A.B.'s testimony was properly introduced to show intent, the young man's testimony was so prejudicial that it outweighed any possible probative benefit (see infra).

### Scheme, Plan, or System

{¶ 49} While the trial court allowed A.B. to testify based on the "intent" exception, we also consider whether his testimony is admissible under the "scheme, plan, or system" exception, as the state additionally argued for admissibility based on this exception. Specifically, the state argued that A.B.'s testimony was admissible because it tended to show Williams's "scheme, plan, or system" to mentor young boys who lacked male role models and groom them to be his victims.

---

[5]R.C. 2907.01(B).

{¶ 50} In *State v. Curry* (1975), 43 Ohio St.2d 66, 68, 330 N.E.2d 720, the Ohio Supreme Court explained when other-acts evidence is admissible pursuant to the "scheme, plan, or system" exception: "Evidence of a defendant's scheme, plan, or system in doing an act is only relevant in two situations: (1) the other acts are part of one criminal transaction such that they are inextricably related to the charged crime, or (2) a common scheme or plan tends to prove the identity of the perpetrator." Id. at 72-73; *Schaim*, 65 Ohio St.3d at 63, 600 N.E.2d 661, fn. 11.

{¶ 51} Thus, there are *only* two situations in which other-acts evidence is admissible to show a defendant's "scheme, plan, or system": (1) to show the background of the alleged crime or (2) to show identity.

{¶ 52} If evidence of a "scheme, plan, or system" is offered to show background, then it is inextricably related to the charged crime and admissible because "it would be virtually impossible to prove that the accused committed the crime charged without also introducing evidence of the other acts." *State v. Lytle* (1976), 48 Ohio St.2d 391, 403, 358 N.E.2d 623, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154, citing *Curry*, 43 Ohio St.2d at 73. Thus, extrinsic evidence is admissible to prove a defendant's scheme, plan, or system when the evidence is either probative of a sequence of events leading up to the crime charged or preparatory of the crime charged. *State v. Nucklos*, 171 Ohio App.3d 38, 2007-Ohio-1025, 869 N.E.2d 674, affirmed, 121 Ohio St.3d 332, 2009-Ohio-792, 904 N.E.2d 512.

{¶ 53} In *Maple Hts. v. Boyd* (Feb. 18, 1999), Cuyahoga App. No. 73900, this court

allowed other acts into evidence—namely, that prior to the assault of the bank's manager, the defendant was attempting to make a withdrawal from another individual's savings account with an invalid power of attorney. This court held that the evidence of the defendant's actions concerning the power of attorney explained the circumstances surrounding the alleged assault and formed part of the immediate background of that charge as it was inextricably related to the alleged criminal act. Id.

{¶ 54} If evidence is offered to show identity, then the proponent of the evidence is trying to prove the identity of the criminal with evidence of other acts committed by the defendant that are so similar to the present crime that a single person, the defendant, must have committed both crimes. This is also known as "modus operandi" or a criminal's "behavioral footprint." In order to qualify under this exception, identity must be a material issue in the trial. *Curry*, 43 Ohio St.2d at 72. "Identity is in issue when the fact of the crime is open and evident but the perpetrator is unknown and the accused denies that he committed the crime." *State v. Ogletree*, Cuyahoga App. No. 94512, 2011-Ohio-819, ¶ 36, appeal not allowed by 129 Ohio St.3d 1409, 2011-Ohio-3244, 949 N.E.2d 1004, citing *State v. Smith* (1992), 84 Ohio App.3d 647, 666, 617 N.E.2d 1160. The exception does not, however, extend to other acts committed in a similar way for an unrelated offense when identity is not at issue. See *State v. Eubank* (1979), 60 Ohio St.2d 183, 186, 398 N.E.2d 567; see also *State v. Thompson* (1981), 66 Ohio St.2d 496, 422 N.E.2d 855.

{¶ 55} In *State v. Bey* (1999), 85 Ohio St.3d 487, 709 N.E.2d 484, the Ohio Supreme Court affirmed the trial court's decision allowing other-acts evidence to show identity,

finding that the other-acts evidence established a "behavioral fingerprint" linking the appellant to the crime due to the common features. The court noted that the deaths of the current and prior victims occurred under nearly identical circumstances: both victims were businessmen who were killed at their place of business, both died after being stabbed with a knife in the chest, both men had their trousers removed and their shoes placed next to their bodies, and although both businesses were robbed, jewelry was left on each person. Id. at 491. The court found that because the evidence demonstrated a similar method of operation, it was probative of identity. Id.

{¶ 56} This court is aware of a number of sexual-assault cases from this district and others that have allowed other-acts testimony to show scheme, plan, and system even though identity was not at issue and the facts of the other acts evidence did not form the "immediate background" of the crime as charged. These cases, however, seemingly ignore the Ohio Supreme Court's holding in *Curry*. See, e.g., *State v. Fortson*, Cuyahoga App. No. 92337, 2010-Ohio-2337; *State v. Williams*, Cuyahoga App. No. 92714, 2010-Ohio-70; *State v. Russell*, Cuyahoga App. No. 83699, 2004-Ohio-5031; *State v. Bess*, Cuyahoga App. No. 91560, 2009-Ohio-2032; *State v. Sharp*, Cuyahoga App. No. 84346, 2005-Ohio-390; *State v. Paige*, Cuyahoga App. No. 84574, 2004-Ohio-7029; *State v. Ervin*, Cuyahoga App. No. 80473, 2002-Ohio-4093; *State v. Cornell* (Nov. 27, 1991), Cuyahoga App. No. 59365, affirmed by (1993), 68 Ohio St.3d 1416, 624 N.E.2d 191.[6]

---

[6]We do note that in some of the above-cited cases, the other-acts evidence was also permitted pursuant to other stated exceptions in Evid.R. 404(B)—i.e., in *Ervin*, this court found that the other-acts evidence was permitted to show a lack of accident or mistake.

{¶ 57} Because we must follow precedent established by the Ohio Supreme Court, we are bound by the holding in *Curry*. Therefore, to be admissible, other-acts evidence purporting to show a defendant's common plan, scheme, or system must conform with *Curry*. Moreover, in cases that deal with sexual assault, the Ohio Supreme Court has carved out no exceptions based on a defendant's filial relationship with the victim, a defendant's propensity to "groom" his victim, or a defendant's pattern of purchasing gifts for his victim. Therefore, these "schemes" may not be used to justify admission of other-acts evidence unless they fall within the exceptions stated in *Curry* or another enumerated exception.

{¶ 58} In considering the case at bar, the state never claimed that the perpetrator's identity was at issue. If a crime occurred in this case, Williams was the perpetrator. Furthermore, the sexual acts with A.B. were not a background act that formed the foundation of the crime charged—they occurred more than a decade before the alleged abuse against J.H.; therefore, they were chronologically and factually separate occurrences.

{¶ 59} The evidence that the state offered was not submitted to establish Williams as the person who had committed the acts of sexual abuse; rather, the evidence was submitted for the purpose of showing that Williams had a character trait of molesting teenage boys and that he acted in conformity with his past behavior. See *Miley*, 2006-Ohio-4670. The state's argument relies on the very inferential pattern that Evid.R. 404(B) prohibits; evidence that Williams previously molested a teenage boy was introduced only to compel the same inference—he did it before, so he must have done it again. See *Williams*, 2010-Ohio-70, at ¶ 68 (McMonagle, J., dissenting in part).

21

{¶ 60} In reviewing the rest of the Evid.R. 404(B) exceptions, we see no other exception that applies to the case at bar. Therefore, the trial court improperly allowed A.B.'s testimony into evidence. The trial court also improperly allowed into evidence testimony from the social worker regarding Williams's past conviction stemming from his relationship with A.B.

Prejudicial Effect

{¶ 61} Next we look to what prejudicial effect the admission of A.B.'s testimony and the social worker's statements had on the outcome of Williams's trial. If the testimony did not prejudice Williams, then it is harmless error, and he is not entitled to a reversal.

{¶ 62} Even if a court finds that the other-acts evidence was offered for a valid purpose under Evid.R. 404(B), the court must still consider whether the evidence is substantially more prejudicial than probative; if so, then it must still be excluded because of its deleterious effects on an accused's right to a fair trial. See *State v. Matthews* (1984), 14 Ohio App.3d 440, 471 N.E.2d 849; Evid.R. 403(A). "Prejudice occurs if there is a reasonable possibility that the error might have contributed to the conviction." *State v. Basen* (Feb. 16, 1989), Cuyahoga App. No. 55001, citing *State v. Cowans* (1967), 10 Ohio St.2d 96, 104-105, 227 N.E.2d 201.

{¶ 63} The trial court's determination of whether admission of other acts is unduly prejudicial turns upon consideration of whether the evidence is offered for a proper purpose, whether it is relevant (could the jury reasonably conclude that the other act occurred and that the defendant was the actor), whether the probative value of evidence of the other acts

substantially outweighs the potential for unfair prejudice, and whether the jury is instructed that the evidence is to be considered only for the proper purpose for which it was admitted. *Huddleston*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed2d 771.

{¶ 64} There is no doubt that A.B.'s testimony coupled with the social worker's statements unfairly prejudiced Williams. Although we are cognizant that a defendant in a case such as this may be convicted based solely on the victim's testimony, here, there was testimony that the victim was a troubled teenager, and no physical evidence of sexual abuse was found. The case essentially hinged on the credibility of the witnesses. In cases such as these, there is a real risk that a jury will believe that if Williams did it once, he must have done it again. That is the danger cautioned of and protected against by Evid.R. 403 and 404. Therefore, the trial court erred in finding that the probative value of A.B.'s testimony outweighed any prejudicial effect.

{¶ 65} We are further troubled by the trial court's decision to wait until mid-trial to rule on the Evid.R. 404(B) motion. R.C. 2907.02(E) provides, "Prior to taking testimony or receiving evidence of any sexual activity of the victim or the defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers, which shall be held at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial." Although for good cause shown the evidentiary hearing may be held during trial, we think a more prudent course of action is for a trial court to hold the hearing before trial begins, because a decision prior to trial gives both parties a chance to adequately prepare. Here, the trial court's procedure in handling the

23

state's motion further prejudiced Williams, especially since the hearing was spaced out between the testimony of several witnesses.

**{¶ 66}** The first assignment of error is sustained.

Sufficiency of the Evidence

**{¶ 67}** In the third assignment of error, Williams claims, "The trial court erred in failing to grant appellant's motion for judgment of acquittal on all charges because the evidence presented was not legally sufficient to support a conviction."

**{¶ 68}** In *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, the Supreme Court of Ohio held as follows:

**{¶ 69}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

**{¶ 70}** In *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶ 1, the Ohio Supreme Court held that in evaluating the sufficiency of the evidence to support an appellant's conviction, a reviewing court must consider all the testimony that was before the trial court, whether or not it was properly admitted. Id. *Brewer* held, " '[W]here the evidence offered by the State and admitted by the trial court—whether erroneously or not— would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not

preclude retrial.' " Id., quoting *Lockhart v. Nelson* (1988), 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265.

{¶ 71} In this case, after viewing the admitted evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. For purposes of evaluating the sufficiency of the evidence, we note that if believed, all the testimony that was before the trier of fact, whether or not it was properly admitted, would convince the average mind of Williams's guilt beyond a reasonable doubt. Therefore, while we find that a reversal is necessary based upon trial errors, we do not find that a discharge is warranted based upon insufficient evidence. Accordingly, we overrule Williams's third assignment of error.

{¶ 72} The remaining assignments of error are moot. See App.R. 12(A)(1)(c).

{¶ 73} Accordingly, the case is remanded for proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

KILBANE, A.J., and BLACKMON, BOYLE, COONEY, ROCCO, STEWART, and SWEENEY, JJ., concur.

GALLAGHER and ROCCO, JJ., concur separately.

SWEENEY, GALLAGHER, and KEOUGH, JJ., concur separately.

CELEBREZZE JR., J., dissents.

SEAN C. GALLAGHER, J., concurring.

25

**{¶ 74}** I concur fully with the judgment and analysis of the majority with respect to the application of Evid.R. 404(B) to the facts in this case. I write separately to address my concern about the reference to R.C. 2945.59 in the analysis of "other acts" evidence by the majority. I question the reference to R.C. 2945.59, not only in this case, but in other Ohio courts addressing Evid.R. 404(B) issues in light of the adoption of the Ohio Rules of Evidence.

**{¶ 75}** Evid.R. 102 outlines the purpose of evidentiary rules like 404(B):

**{¶ 76}** "The purpose of these rules is to provide procedures for the adjudication of causes to the end that the truth may be ascertained and proceedings justly determined. The principles of the common law of Ohio shall supplement the provisions of these rules, and the rules shall be construed to state the principles of the common law of Ohio unless the rule clearly indicates that a change is intended. These rules shall not supersede substantive statutory provisions."

**{¶ 77}** With the adoption of the Ohio Rules of Evidence, effective July 1, 1980, the rules effectively trumped the existing statutory mandates in areas of procedure or the admission of evidence that codified the common law. Arguably, only those statutes that mandated a substantive statutory procedure remained viable. Despite this change, Ohio courts continued to cite R.C. 2945.59 when dealing with issues involving Evid.R. 404(B).

**{¶ 78}** R.C. 2945.59 reads as follows:

**{¶ 79}** "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is

26

material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

{¶ 80} This statute, enacted in the Code of Criminal Procedure of Ohio in 1929, is merely expressive of the common law and is a rule of evidence and not a rule of substantive law. *State v. Pack* (1968), 18 Ohio App.2d 76, 246 N.E.2d 912, citing *Clyne v. State* (1931), 123 Ohio St. 234, 174 N.E. 767.

{¶ 81} Evid.R. 404(B) states as follows:

{¶ 82} "Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶ 83} The Ohio Supreme Court has often cited both the rule and the statute, suggesting that it is unconcerned about the existence of both, as they simply codify the common law previously in existence. Nevertheless, Section 5(B), Article IV, Ohio Constitution, vests the Supreme Court with exclusive authority over the rulemaking provisions for Ohio courts.

{¶ 84} Section 5(B), Article IV, Ohio Constitution, makes this point clear:

{¶ 85} "The supreme court shall prescribe rules governing practice and procedure in

all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. Proposed rules shall be filed by the court, not later than the fifteenth day of January, with the clerk of each house of the general assembly during a regular session thereof, and amendments to any such proposed rules may be so filed not later than the first day of May in that session. Such rules shall take effect on the following first day of July, unless prior to such day the general assembly adopts a concurrent resolution of disapproval. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."

{¶ 86} While there may not be much of a debate over whether R.C. 2945.59 is in conflict with Evid.R. 404(B), in my view, Evid.R. 404(B) is the controlling law on "other acts" evidence. At some point, the Supreme Court of Ohio may want to assess the viability of statutes like R.C. 2945.59 in an effort to provide clarity by keeping future reviews to one area of law.

ROCCO, J., concurs in the foregoing opinion.

JAMES J. SWEENEY, J., concurring.

{¶ 87} Although I concur in the judgment, I join in only some of the reasons articulated by the majority. Specifically, with regard to the first assignment of error concerning the admission of evidence pursuant to Evid.R. 404(B), I believe that the other-acts evidence was probative and potentially admissible as proof of defendant's intent. However, I agree that such evidence, if admissible, would have been in rebuttal of evidence placing defendant's intent in issue. Even though defendant's counsel suggested that the

evidence would not establish the requisite intent during opening arguments, I would agree it was error to allow the state to introduce such inflammatory other-acts evidence during its case-in-chief. I would otherwise concur with the reasoning of the majority as to the first assignment of error.

E. Gallagher and Keough, JJ., concur in the foregoing opinion.

CELEBREZZE JR., J., dissenting.

**{¶ 88}** I respectfully dissent from the majority's conclusion that the other-acts evidence presented to the jury through the testimony of A.B. was not admissible pursuant to Evid.R. 404(B) and R.C. 2945.59. In my view, the state's presentation of appellant's purposeful dealings and subsequent manipulation of his position of trust with the young boys and their families established his modus operandi and common scheme, plan, and system in this matter.

**{¶ 89}** Over the course of appellant's trial, the state presented evidence that appellant's relationships with J.H. and A.B. began while the boys were between the ages of 14 and 16 years old. The record reflects that appellant forged a bond with each of the boys while he occupied a position of trust and authority—as A.B.'s high school teacher and as J.H.'s mentor. The testimony adduced from J.H. and A.B. indicates that, over time, each of the boys developed strong feelings for appellant based, in part, on the lack of a strong father figure in their lives. Subsequently, appellant used his position of trust and authority to instigate sexual activity with these young boys, who were led to believe that such conduct was normal.

**{¶ 90}** In my view, appellant's conduct constituted a unique, identifiable plan of criminal activity that is applicable to the crime with which appellant is now charged. The fact that appellant's identity was not in question in this matter should not provide him with a legal shield when it was apparent that the scheme, plan, or system conceived by appellant required him to befriend J.H. and A.B. over a fairly substantial course of time before using his position of trust and authority to initiate sexual activity.

**{¶ 91}** Therefore, I would apply the analysis set forth in *State v. Fortson*, Cuyahoga App. No. 92337, 2010-Ohio-2337, ¶ 32 (evidence of a correction officer's past sexual conduct with inmates established a modus operandi that shared common features with the crimes for which defendant was presently charged, despite defendant's identity not being an issue); *State v. Ervin*, Cuyahoga App. No. 80473, 2002-Ohio-4093, ¶ 51 ("evidence of defendant's previous sexual advances toward [young girls], both eight years old at the time of the abuse, was presented to demonstrate defendant's pattern of engaging in sexual intercourse with young girls in his family while occupying a position of trust and authority"); *State v. Paige*, Cuyahoga App. No. 84574, 2004-Ohio-7029, ¶ 15 (holding that testimony of the defendant's daughters was properly "used to demonstrate a pattern of sexual abuse with young female family members" and the defendant's practice of purchasing "gifts for the victims if they engaged in sexual conduct with him"); *State v. Russell*, Cuyahoga App. No. 83699, 2004-Ohio-5031, ¶ 37 (holding that the "state proved appellant chose female victims of a filial position to him who were under the age of twelve. Appellant began touching his victims in a progressively sexual manner. When he became sure he could do so, he then

sexually gratified himself, also in a progressive manner"); see also *State v. Williams*, Cuyahoga App. No. 92714, 2010-Ohio-70; *State v. Bess*, Cuyahoga App. No. 91560, 2009-Ohio-2032; *State v. Sharp*, Cuyahoga App. No. 84346, 2005-Ohio-390; *State v. Cornell* (Nov. 27, 1991), Cuyahoga App. No. 59365, affirmed (1993), 68 Ohio St.3d 1416, 624 N.E.2d 191; *State v. Ristich*, Summit App. No. 21701, 2004-Ohio-3086, ¶ 16.

{¶ 92} Accordingly, I believe that an accurate interpretation of Evid.R. 404(B) does not require the reversal of the conviction in the instant case. I would therefore affirm appellant's convictions.

APPENDIX

"II. Appellant was denied his federal and state due process rights to notice because he was tried for offenses not contained in the indictment and the indictment did not charge him with sufficient specificity.

"IV. The verdict was against the manifest weight of the evidence.

"V. The court abused its discretion and committed cumulative errors that violated appellant's constitutional rights to a fair trial and due process.

"VI. Appellant was denied his constitutional right as guaranteed by the United States and Ohio Constitutions to effective assistance of counsel when his attorney failed to timely object to hearsay testimony and failed to move for a mistrial."