[Cite as *In re C.T.*, 2013-Ohio-2458.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 97278**

---

# IN RE:   C.T.

# A MINOR CHILD

---

## JUDGMENT:
REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 10117417

**BEFORE:** McCormack, J., Stewart, A.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 13, 2013

**ATTORNEY FOR APPELLANT**

Joseph J. Lanter
Abel & Zocolo Co., L.P.A.
815 Superior Avenue
Suite 1915
Cleveland, OH 44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

Stephanie L. Lingle
T. Allan Regas
Assistant County Prosecutors
8th Floor Justice Center
1200 Ontario Street
Cleveland, OH 44113

TIM McCORMACK, J.:

{¶1} This cause is before this court on remand from the Supreme Court of Ohio. In this especially nuanced subject area of the Ohio Rules of Evidence, that being the admissibility of other acts evidence, we now have clear guidance resulting from *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278. *Williams* clarified for Ohio's trial courts the application of both evidence Rule 404(B) and R.C. 2945.59. *Williams* eliminates certain proscriptions for the introduction of other acts evidence under both the statute and the rule; but equally as clear, *Williams* firmly restates those forms of other acts evidence that would be, and are, clearly prejudicial to an accused.

{¶2} Our task on remand is to carefully identify those nuances in this case and apply the analysis provided in *Williams*. After applying the refined analysis to the other acts evidence in this case, we conclude the other acts evidence is not admissible here pursuant to *Williams*, and therefore, reverse and remand the matter to the juvenile court for a new hearing.

## Substantive Facts and Procedural History

{¶3} In *In re C.T.*, 8th Dist. No. 97278, 2012-Ohio-1644 ("*C.T. I*"), a prior panel of this court relied upon the holding from this court's en banc decision in *State v. Williams*, 195 Ohio App.3d 807, 2011-Ohio-5650, 961 N.E.2d 1203 (8th Dist.) ("*Williams I*") and concluded that the other acts evidence in this case was inadmissible. As a result, we reversed the trial court's adjudication of C.T. *C.T. I* was decided while *Williams I* was pending before the Supreme Court of Ohio for its review.

**{¶4}** The state appealed our decision in *C.T. I* to the Supreme Court, and the court accepted the state's appeal and held the case for its decision in the *Williams* case. Subsequently, the court reversed *Williams I*, in *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278 (hereafter "*Williams II*"). The court then issued an order remanding *C.T. I* to this court for an application of *Williams II*.

## Admissibility of Other Acts Evidence

**{¶5}** We begin our analysis with the recognition that a hallmark of the American criminal justice system is the principle that "proof that the accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime." *State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975).

**{¶6}** Under the Ohio Rules of Evidence, evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's character as to criminal propensity. As stated in Evid.R. 404(B), such evidence is inadmissible to prove "the character of a person in order to show action in conformity therewith." However, the rule permits such evidence to be introduced for other purposes, such as for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).

**{¶7}** R.C. 2945.59, which predates Evid.R. 404(B), codifies a similar principle. It states:

In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶8} *C.T. I* was decided based on this court's holding in *Williams I*. Therefore, we begin with a discussion of *Williams I* and its reversal by the Supreme Court of Ohio.

### *Williams I* **and** *II*

{¶9} In *Williams I*, Williams was charged with multiple counts of raping a 14-year-old boy. Williams met the boy at a church. Williams bought him gifts frequently and paid him to do odd jobs at his home, before beginning to sexually abuse him.

{¶10} The state introduced other acts evidence that showed that, 11 years earlier, Williams preyed upon another 16-year-old boy, A.B., who was a member of the swim team that Williams coached. A.B. testified at trial that his own father was not involved in his life and he trusted Williams; he and Williams had a sexual relationship, including kissing, masturbation, and oral sex.

{¶11} The state argued the other acts evidence regarding Williams's prior calculated approach with A.B. was admissible on two bases: (1) to show that the intent of Williams's conduct in spending time with the boy was for the purpose of receiving sexual

gratification; and (2) to show Williams's "scheme, plan or system" in grooming and gaining the trust of young boys who lacked male role models.

{¶12} This court disposed of the claim that the other acts evidence was to show intent, and it focused on the state's assertion the other acts evidence was to show "scheme, plan, or system."

{¶13} Relying on *State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975), we stated that there are only two situations in which other acts evidence would be admissible to show a defendant's "scheme, plan, or system" — when the evidence is offered to show (1) the background of the alleged crime, or (2) identity. *Williams I* at ¶ 51.

{¶14} Applying that rule, we determined that the other acts evidence could not be admitted to show Williams's "scheme, plan, or system," because (1) the other act occurred more than a decade ago and, therefore, did not form the background of the crime at issue; and (2) identity was not at issue in the case. *Williams I* at ¶ 58.

{¶15} The Supreme Court of Ohio reversed our decision in *Williams I,* holding the admissibility of "scheme, plan, or system" evidence is *not* limited to only those two situations. Rather, the court explained that Evid.R. 404(B) affords the trial court broad discretion regarding the admission of other acts evidence. To properly exercise that discretion, the trial court should engage in a three-step analysis.

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence, Evid.R. 401. The next step is to consider whether evidence of the other

crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403.

*Williams II* at ¶ 20.

**{¶16}** Applying the first step, the Supreme Court of Ohio determined that the prior victim's testimony was relevant because it tended to show the motive Williams had and the preparation and plan he exhibited in targeting, mentoring, grooming, and abusing teenage boys. The court also determined that the prior victim's testimony that Williams received "some type of sexual gratification" is also relevant to show that Williams's intent in cultivating his relationship with young boys was sexual gratification. *Id*. at ¶ 22.

**{¶17}** Applying the second step, which, as the Supreme Court of Ohio explained, relates to whether the evidence is presented to prove the accused's character and to show the conduct was in conformity with that character. The court determined the state did not offer the other acts evidence to show conforming conduct — the court pointed out the trial court gave two limiting instructions to the jury that the evidence was not being offered to prove Williams's character and the jury was presumed to have followed those instructions. *Id*. at ¶ 23.

**{¶18}** Applying the third step, the court considered whether the probative value of the other acts evidence of the prior relationship was substantially outweighed by the

danger of unfair prejudice. The court concluded this evidence was not unduly prejudicial, because the trial court instructed the jury that this evidence could not be considered to show that Williams had acted in conformity with a character trait. This instruction lessened the prejudicial effect of the prior victim's testimony.

{¶19} Pursuant to the three-step analysis, the court, therefore, concluded Evid.R. 404(B) permitted the admission of evidence regarding Williams's prior crime, as it helped to prove motive, preparation, and plan on the part of Williams, and the prejudicial effect did not substantially outweigh the probative value of that evidence. *Id.* at ¶ 24.

### *C.T. I*

{¶20} With this background in mind, we turn to the instant case. The trial court found C.T. delinquent for raping an acquaintance from his school. The pertinent facts of the case were set forth in *C.T. I* at ¶ 4-12, which we adopt and repeat verbatim in the following:

> At trial, K.W. testified that she met C.T. in the high school band. As they traveled to a football game in different buses, K.W. initiated contact with C.T. by sending a text message to his cell phone. K.W. indicated she and her friends were reading about "sex and porn." K.W. and C.T. sat near each other during portions of the football game and then left on their separate buses where they resumed a text messaging phone conversation. They discussed "hanging out" together that night. C.T. suggested that they should "hang out" in K.W.'s car; to which K.W. replied, "We shall. [F]ind me."
>
> Both K.W. and C.T. testified that they met each other at a party after the football game as planned and that K.W.'s mother was acting as a chaperone. K.W.'s mother recalled extending her daughter's curfew that night.

As C.T. was walking K.W. to her car, K.W. either agreed or offered to drive C.T. home. Both said C.T. was holding K.W.'s hand as she drove. According to C.T., they passed a street and wound up parking in a cul-de-sac with poor lighting. According to K.W., she initially believed C.T. lived in that area. In either case, both said they began talking.

C.T. and K.W. then described a similar course of events where K.W. moved (or was assisted by C.T.) into the passenger side of the vehicle where C.T. was sitting. They began kissing. K.W. helped remove her sweatshirt and shirt and C.T. removed his penis from his pants. He asked K.W. to perform oral sex, and she indicated she had never done so before; to which C.T. responded that there was a first time for everything. K.W. performed oral sex on C.T., and he penetrated her vaginally with his fingers.

K.W. testified that she told C.T. she did not want to engage in this activity and told C.T. to stop. C.T. testified that K.W. never said anything or gave any indication to him that the activity was anything other than consensual. K.W. said she complied because she was fearful of C.T. but admitted he did not threaten her verbally or physically.

At one point, K.W. returned to the driver's seat to check her phone. Her mother told her she needed to come home. According to C.T., K.W. said they could resume the sexual activity the next day. But, at C.T.'s request, she resumed performing oral sex upon C.T. K.W. said she did this just to get it over with and get out of the situation. C.T. wiped his hands with a tissue that he discarded out the window and onto the street.

C.T. testified that K.W. asked him if they were dating and seemed happy to know he was considering it. When K.W. returned home, she sent a cell phone text message to C.T. She invited C.T. to get together the next day but he said he could not because he was in trouble. Then, K.W. went to lunch with a friend and told her about her sexual encounter with C.T. Later that day, K.W. was on the bus with other band members when another teenager, B.T., called her outside to talk. B.T. asked K.W. about the allegations she had made against C.T. C.T. was standing nearby. C.T. denied that he forced K.W. to do anything. At this point, K.W. called her parents to pick her up and told her parents she had been raped by C.T.

K.W. was taken to the police station and then the hospital for an examination. As part of her statement to an examining nurse, K.W. indicated that she was aware that C.T. had "been in trouble with girls before, but [she] didn't want to believe it."

More than once during her testimony, K.W. confirmed that if C.T. had indicated to her that they were boyfriend and girlfriend, they would not be in court. On redirect examination, however, K.W. indicated that even if C.T. had said she was his girlfriend, she would still say she was raped by him.

{¶21} The other acts evidence in this case came from C.T.'s own testimony. Under cross-examination by the state, C.T. stated he previously pleaded delinquent to a charge of gross sexual imposition after a girl accused him of forcefully making her perform oral sex on him and also digitally penetrating her. Regarding the circumstances surrounding that incident, C.T. testified only that "[s]he said she had to go to the garage so she had shoes. That put us alone." C.T.'s own brief testimony is the other acts evidence that the state claimed to be admissible to establish (1) C.T.'s modus operandi (2) and a lack of mistake concerning consent.

{¶22} Following the bench trial, the trial court found C.T. delinquent and sentenced him to the Ohio Department of Youth Services for a minimum period of 12 months and a maximum period not to exceed the age of 21.

{¶23} On appeal, C.T. raised several assignments of error. The first assignment of error, which was the focus in our prior decision, and is again the focus in this decision on remand, concerns whether the trial court erred by permitting evidence of C.T.'s prior offense to be admitted. The state contended that C.T.'s prior delinquency case, which it

argued involved an activity that was essentially identical in C.T.'s modus operandi, or behavioral footprint, "proved that he had a specific method of how he rapes young women."

{¶24} Relying exclusively on this court's holding in *Williams I*, the prior panel concluded C.T.'s previous delinquency adjudication was not admissible to show a "scheme, plan, or system," because the prior incident did not form the background of the instant case and identity was not at issue.

{¶25} Based on *Williams II*, the Supreme Court of Ohio reversed *C.T.I.*, and remanded the case to this court for an application of *Williams II*. *In re C.T.,* 135 Ohio St.3d 133, 2012-Ohio-5886, 984 N.E.2d 1055. Both parties have submitted supplemental briefs for our consideration.

## Application of *Williams II*

{¶26} As instructed, we now apply the three-step analysis set forth in *Williams II* to assess the admissibility of the other acts evidence in this case.

## First Part of *Williams* Test: Relevancy

{¶27} The first part of the test asks whether the evidence was relevant to a fact of consequence. *Williams II* at ¶ 20. In *Williams II*, the victim in the prior incident testified extensively at trial regarding the defendant's calculated conduct leading to the eventual sexual abuse. The conduct paralleled Williams's conduct with the present victim. In both incidents, Williams had targeted teenage males who had no father

figure, in order to gain their trust and confidence and groom them for subsequent sexual activities. Based on these facts, the court determined that evidence of Williams's prior offense was relevant "because it tended to show the motive Williams had and the preparation and plan he exhibited of targeting, mentoring, grooming, and abusing teenage boys." *Williams II* at ¶ 22. "Evidence that Williams had targeted teenage males who had no father figure to gain their trust and confidence and groom them for sexual activity with the intent of sexual gratification may be admitted to show the plan of the accused and the intent for sexual gratification." *Id*. at ¶ 25.

{¶28} In contrast to *Williams*, the only other acts evidence here consists of C.T.'s own brief testimony that he was found delinquent to gross sexual imposition where another teenage girl accused him of forcing her to perform oral sex on him and also digitally penetrating her. The incident occurred in a garage, where she had gone to get her shoes and he went there with her.

{¶29} The state contends C.T.'s prior adjudication was relevant to prove (1) C.T.'s lack of mistake, and (2) C.T.'s "scheme, plan, and system."

{¶30} First, regarding the lack of mistake, the state argues C.T. "had a history of claiming that he thought his victims were consenting and was, perhaps, mistaken in his understanding of how consent is communicated." The state, therefore, used his prior admission to similar conduct to show that he could not have been mistaken, once again,

when the exact same behavior landed him in trouble in the juvenile court the last time he did it.

{¶31} This exception is not applicable to the facts at issue in this case. C.T. did not testify that he was mistaken about whether K.W. consented or not. Rather, C.T. alleged K.W. consented to the sexual conduct and K.W. testified she did not. Their testimony conflicted directly. If C.T. had testified K.W. said "no," but he thought she still consented, then the mistake on C.T.'s part, or lack thereof, would be placed in issue. That is not the case here.

{¶32} Second, the state claims the two cases show similar modus operandi, or behavioral fingerprint, on the part of C.T., in that in both cases he found an opportunity to be alone with a young female, and forcibly engaged in oral sex and digital penetration of the girl. The state argues this shows C.T. had a specific method of raping young women, and this modus operandi demonstrates a pattern of conduct that is excepted in Evid.R. 404(B).

{¶33} In sharp contrast to *Williams*, C.T.'s conduct in both incidents hardly constituted a unique behavioral footprint. Finding an opportunity to be alone with another is a necessary part of engaging in sexual conduct, whether lawfully or not. As to the allegation of engaging in unconsented oral sex and digital penetration, this is conduct that goes to an element of the rape offense itself, not a "scheme," "plan," or "method." In addition, in *Williams*, the defendant spent an extended period of time grooming the

victim for the eventual purpose of sexual gratification. Here the entire incident involving two teen-aged schoolmates occurred, seemingly spontaneously, during the time span of one evening in a jointly arranged encounter. They were acquaintances of similar age. Unlike *Williams*, there is no evidence here demonstrating a unique behavioral footprint, and therefore, the previous adjudication of delinquency is not relevant to making any fact that is of consequence to the determination of whether C.T. engaged in sexual conduct with K.W. without consent.

## Second Part of *Williams* Test: Purpose of Evidence

**{¶34}** The second part of the *Williams* test questions the state's purpose in introducing the other acts evidence, i.e., whether it was to show propensity. *Id*. In this case, the defendant did not deny the sexual conduct occurred. The only issue for the trier of fact to determine was whether there was consent. Essentially, the state asked the trial court to infer a lack of consent through the consideration of the prior case, where C.T. was found to engage in unconsented sexual conduct. This is exactly what the rule prohibits — to prove that C.T. had a propensity to engage in sexual conduct with a female without consent.

## Third Part of *Williams* Test: Prejudice

**{¶35}** The third part of the *Williams* test asks whether the probative value of the other acts evidence at issue is outweighed by its prejudicial effect. *Williams* at ¶ 20. Both parties in this case testified that sexual activity occurred. C.T. testified that K.W.

consented. K.W. testified she did not. This is a classic "he said she said" case, and the entire case hinges on the parties' credibility. The admission of evidence showing C.T. had previously engaged in unconsented sexual conduct certainly tips the scales of credibility in favor of the prosecution's claim. The trial court appeared to have, indeed, resolved the conflicts in the testimony by considering the prior delinquency adjudication: in the judgment entry, the trial court specifically stated that it found C.T. delinquent based on the totality of the evidence *including* evidence of modus operandi. Therefore, the other acts evidence in this case is highly prejudicial and, thus, in violation of Evid.R. 403.

{¶36} Having assiduously applied the three-step analysis set forth in *Williams II*, we conclude C.T.'s prior adjudication of delinquency is inadmissible other acts evidence. Such information should have been excluded by the trial court. Its improper admission prejudiced C.T. in violation of the basic tenet of Evid.R. 404(B).

{¶37} The first assignment of error is sustained and the remaining assignments of error are rendered moot. Accordingly, we reverse C.T.'s adjudication and remand the matter to the juvenile court for a new hearing.

{¶38} Judgment reversed, adjudication vacated, and cause remanded.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile court division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

MELODY J. STEWART, A.J., and
EILEEN T. GALLAGHER, J., CONCUR