[Cite as *State v. Cobia*, 2015-Ohio-331.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                              :               APPEAL NO. C-140058
                                                            TRIAL NO. B-1304778
    Plaintiff-Appellee,                   :

 vs.                                       :               *O P I N I O N.*

RAY COBIA,                                  :

    Defendant-Appellant.                  :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed, and Appellant Discharged in Part and Cause Remanded in Part

Date of Judgment Entry on Appeal:  January 30, 2015


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Rubenstein & Thurman, L.P.A.*, and *Scott A. Rubenstein*, for Defendant-Appellant.


Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}    Ray Cobia was convicted of sexual battery, impersonating a police officer and child enticement. The convictions arose from a sexual encounter with a 17-year-old woman that he had met on a chat line.  Rather than pay the teenager for sex as he had indicated to her he would on the phone, Mr. Cobia falsely told her he was a police officer, and, under the state's theory, thereby coerced her into having sex with him.

{¶2}    There are two primary issues that are dispositive of this appeal.  The first involves the child-enticement statute.  While this appeal was pending, the Ohio Supreme Court found the statute unconstitutional.  As a result, that conviction must be reversed. The second issue involves the admission of "other acts" evidence.  The trial court allowed evidence of a 2004 incident where Mr. Cobia had coerced a woman into having sex with him by saying that he was a police officer.   We find that such evidence was impermissible other-acts evidence under Evid.R. 404(B), and as a result, are compelled to reverse the other convictions as well.

### I. Two Victims Testify at Trial

{¶3}    Asia Anderson testified that she met Ray Cobia in July 2013, on a chat line typically used by individuals wishing to exchange sex for money.  The two reached an understanding about the price, and Mr. Cobia came to Ms. Anderson's apartment. The apartment was divided in half with separate entrances.  During the day in question, Ms. Anderson was on her side of the apartment, and her mother, five-year-old brother and one-year-old son were on the other side.

{¶4}    When Mr. Cobia arrived, Ms. Anderson tried to increase the price that had been discussed on the phone.   According to Ms. Anderson's trial testimony, Mr. Cobia became "cocky," "arrogant," and "rude."  Unwilling to accept the $50 offered by Mr. Cobia, she changed her mind about having sex with him.  At that point, Mr. Cobia

said it was too late, he was already there. By her account at trial, he told her he was a police officer, flashed something that looked like a badge at her, and made a gesture whereby "he made his hand into a gun," which caused Ms. Anderson to believe that he had a gun in his car. Ms. Anderson testified that she decided to comply with Mr. Cobia's sexual demands because of concern for her family on the other side of the apartment.

{¶5} Ms. Anderson performed oral sex on Mr. Cobia and then the two attempted vaginal sex. The encounter culminated with Mr. Cobia ejaculating on a towel. Mr. Cobia left without paying.

{¶6} Within minutes of his departure, Ms. Anderson telephoned Mr. Cobia "to ask him why that had to happen that way?" According to her trial testimony, Mr. Cobia said that he was a District 4 police officer and that she was going to be arrested for prostitution. At this point, Ms. Anderson says she "got really nervous" and called 911 to report that she had been raped.

{¶7} At trial, defense counsel pointed out numerous inconsistencies in the stories that Ms. Anderson told prior to trial and her trial testimony. After the incident, Ms. Anderson called 911 and reported that Mr. Cobia had come to her apartment to check her thermostat and had told her, "If you don't have sex with me you are going to jail." She admitted at trial that this was not true. Defense counsel also pointed out that she had told the nurse at the hospital that she had been threatened with a gun and that Mr. Cobia had told her that he was going to come back and hurt her family. She admitted at trial that Mr. Cobia had not said these things, but maintained that she did feel threatened by him. She also told investigators that Mr. Cobia had telephoned her after the encounter but admitted at trial she was the one who placed the call.

{¶8} Ms. Anderson was not the only one who testified at trial about an unwanted sexual encounter with Mr. Cobia. The very first witness called by the state

3

was a woman who was assaulted in a similar manner by Mr. Cobia in 2004. She testified that she had accepted Mr. Cobia's offer of a ride from a neighborhood bus stop to her transfer stop in downtown Cincinnati. Mr. Cobia told her that he was married and was a minister. As they drove downtown, he turned their conversation from his family life to whether she would accept $1,000 to perform various sexual acts. Hoping to put him off, the victim challenged his ability to come up with that amount of money, causing him to briefly detour from the direct route downtown in an ultimately fruitless search for an ATM. When they finally arrived downtown, Mr. Cobia told the victim that he was a probation officer, "read [her her] rights," and threatened her with arrest for prostitution, unless she agreed to have sex with him. He drove to a nearby park, where he raped her, and then reneged on his promise to let her go. The victim finally managed to escape by jumping from the car. She told the jury that after being arrested, Mr. Cobia had pled guilty to rape and impersonating a police officer. On cross examination, defense counsel suggested that the rape charge might have been reduced to sexual battery as part of a plea deal.

## II. Pleas and a Guilty Verdict

{¶9} For his 2013 acts, Mr. Cobia was indicted for one count of impersonating a police officer, two counts of rape, two counts of sexual battery, and two counts of child enticement. Mr. Cobia entered guilty pleas to the two counts of child enticement in exchange for an agreed sentence of one year. He proceeded to trial on the remaining counts. The jury found him guilty of impersonating a police officer and one count of sexual battery, but was unable to reach a verdict on the remaining counts.

{¶10} On appeal, he presents five assignments of error. He contends that the trial court erred in admitting other-acts evidence and in failing to make the required sentencing findings and calculate his jail-time credit. And he challenges his trial

4

counsel's effectiveness, his convictions under the constitutionally infirm child-enticement statute, and the weight and sufficiency of the evidence to support his convictions.

### III. Analysis

{¶11} We discharge Mr. Cobia on his child-enticement convictions, because the child-enticement statute, R.C. 2905.05(A), is unconstitutional. And we reverse his convictions for sexual battery and impersonating a peace officer, because the admission of evidence concerning Mr. Cobia's prior offenses constituted prejudicial error.

### A. The Child-Enticement Statute is Unconstitutionally Broad

{¶12} We address first, and sustain, Mr. Cobia's second assignment of error, challenging the constitutionality of his child-enticement convictions. While this appeal was pending, the Ohio Supreme Court decided *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156, holding that "R.C. 2905.05(A) is unconstitutionally overbroad because it sweeps within its prohibition a significant amount of constitutionally protected activity." *Id.* at syllabus. On the authority of *Romage*, we reverse Mr. Cobia's child-enticement convictions and order that he be discharged on the offenses. *See State v. Rebholz*, 1st Dist. Hamilton No. C-130636, 2014-Ohio-2429, ¶ 3-4.

### B. The Admission of Other-Acts Evidence was Prejudicial Error

{¶13} In his first assignment of error, Mr. Cobia contends that the trial court abused its discretion in admitting testimony concerning his 2004 convictions for impersonating a peace officer and sexual battery. We sustain the assignment of error upon our determination that the court abused its discretion in admitting this evidence, and that Mr. Cobia was prejudiced.

**{¶14}** Evid.R. 404(B) and R.C. 2945.59 codify the common law "principle that proof that the accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime." *State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975). Thus, in a criminal trial, evidence of other crimes, wrongs, or acts is not admissible for the purpose of proving the accused's character to show that he acted in conformity with that character in committing the charged offense. But other-acts evidence may be admitted if it is relevant and offered for another purpose, such as proof of motive, opportunity, intent, preparation, knowledge, identity, the absence of mistake or accident on the defendant's part, or his scheme, plan, or system in doing the act in question, Evid.R. 404(B), R.C. 2945.59; and if the probative value of the other-acts evidence is not substantially outweighed by the danger of unfair prejudice, Evid.R. 403. *See State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 68, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

**{¶15}** Evid.R. 404(B) and R.C. 2945.59 must be strictly construed against admissibility. *State v. Lowe*, 69 Ohio St.3d 527, 530, 634 N.E.2d 616 (1994). We review the decision to admit other-acts evidence for an abuse of discretion. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, syllabus. And we conclude that the court below abused its discretion.

**{¶16}** The trial court submitted the charges against Mr. Cobia to the jury with a limiting instruction that the evidence concerning Mr. Cobia's 2004 offenses could only be considered for the purpose of deciding his "intent, purpose, or plan" to commit the charged offenses and his "identity" as the perpetrator of those offenses, and not for the

6

purpose of proving his character to show that he had acted in conformity with that character in committing those offenses.

{¶17} Here, the state argues that evidence concerning Mr. Cobia's 2004 offenses was admissible other-acts evidence, because it showed a pattern of conduct that was probative of his identity as the perpetrator of the charged offenses. The two crimes were so similar, contends the state, that they constitute a "behavioral fingerprint" that establishes Mr. Cobia's identity as the perpetrator of the 2013 crimes.

{¶18} Other-acts evidence may be admitted "as evidence of identity 'either because the other act is part and parcel of the plan to commit the charged crime or because the other act is so similar to the crime charged and sufficiently idiosyncratic that it tends to prove the same person committed both acts.' " *State v. Kelly*, 1st Dist. Hamilton No. C-140112, 2014-Ohio-5565, quoting *State v. Morris*, 9th Dist. Medina No. 09CA0022-M, 2012-Ohio-6151, ¶ 18, *aff'd*, Slip Opinion No. 2014-Ohio-5052. But here, Mr. Cobia's identity was not in question. There was no dispute that he was the individual who had engaged in the sexual encounter with Ms. Anderson that was at issue at trial. The only questions were whether the act was consensual, and whether he had impersonated a police officer. Thus, contrary to the state's theory, the 2004 offense should not have been admitted to establish identity. *See Curry*, 43 Ohio St.2d at 73, 330 N.E.2d 720.

{¶19} The state also suggests in passing that the prior incident was admissible to show Mr. Cobia's motive. To establish motive, other-acts evidence "should demonstrate that the accused possesses a specific reason to commit the crime alleged." *See State v. Johnson*, 2d Dist. Montgomery No. 23508, 2011-Ohio-1133, ¶ 55. Thus, if the state argues that a defendant committed murder to cover up an earlier crime, evidence of that earlier crime may be admitted to show the motive

behind the murder. But here the evidence of the 2004 crime didn't suggest a motive or intent for the alleged crime in 2013–it didn't show why he might have committed the crime; it simply showed that he had committed a similar crime in the past. This is exactly the use of other-acts evidence that Evid.R. 404 is designed to prohibit.

{¶20} The jury was given a limiting instruction, and a jury is presumed to have followed the court's instructions. But here, there was no permissible purpose for which the jury could consider the other-acts evidence. And given the weaknesses in the state's case, the submission to the jury of evidence concerning the strikingly similar offenses committed by Mr. Cobia in 2004 presented a substantial danger that the jury would base its verdicts not on the evidence of his culpability in the 2013 offenses, but on its belief that if he did it in 2004, he did it in 2013. This is the inference forbidden by Evid.R. 403 and 404. The "demonstration of a pattern and the inference that [the defendant] acted in conformity with the pattern is precisely why other-acts evidence is generally inadmissible." *See Kelley*, 1st Dist. Hamilton No. C-140112, 2014-Ohio-5565, at ¶ 8. We, therefore, conclude that the trial court abused its discretion in admitting evidence concerning Mr. Cobia's 2004 offenses.

{¶21} We further conclude that Mr. Cobia was prejudiced. In determining whether to grant a new trial based on the erroneous admission of other-acts evidence, a reviewing court "must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record." *State v. Morris*, Slip Opinion No. 2014-Ohio-5052, syllabus; *Kelley* at ¶ 16.

{¶22} The case against Mr. Cobia depended entirely on the testimony of the victim, and her credibility was significantly undermined at trial. Therefore, we cannot say that evidence concerning Mr. Cobia's 2004 offenses did not impact the jury's

verdicts, or that without the other-acts evidence, the evidence of his guilt was strong. Because the court's error in admitting the other-acts evidence was not harmless beyond a reasonable doubt, we hold that he was entitled to a new trial. And we sustain the first assignment of error.

### IV. The Remaining Assignments of Error are Moot

{¶23} Our disposition of Mr. Cobia's first and second assignments of error renders moot the challenges advanced in the balance of his assignments of error, to his trial counsel's effectiveness, the trial court's sentencing errors, and the weight and sufficiency of the evidence. We, therefore, do not reach the merits of those assignments of error.

### V. Conclusion

{¶24} Because R.C. 2905.05(A) is unconstitutional, we discharge Mr. Cobia on his child-enticement convictions. Upon our determination that the admission of other-acts evidence constituted prejudicial error, we reverse his convictions for sexual battery and impersonating a peace officer, and remand this case for further proceedings consistent with the law and this opinion.

Judgment accordingly.

**CUNNINGHAM, P.J.,** and **HENDON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.