[Cite as *State v. Zolikoff*, 2025-Ohio-5040.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                        No. 114660

    v.                                     :

MARK ZOLIKOFF,                          :

    Defendant-Appellant.         :

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED, VACATED, AND REMANDED
**RELEASED AND JOURNALIZED:** November 6, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-686772-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Omar Siddiq, Assistant Prosecuting Attorney, *for appellee.*

Allison F. Hibbard, *for appellant.*

LISA B. FORBES, P.J.:

{¶ 1} Mark Zolikoff ("Zolikoff" or "Defendant") appeals his convictions for two counts of gross sexual imposition (or "GSI"). For the reasons below, we reverse the trial court's decision, vacate Zolikoff's convictions and prison sentence, and

remand this case to the trial court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

### A. Before Trial

{¶ 2} On November 22, 2023, Zolikoff was indicted on two counts of GSI, a third-degree felony in violation of R.C. 2907.05(A)(4). The indictment alleged that, "[o]n or about June 1, 2022 to January 4, 2023 . . . [Zolikoff] did have sexual contact" with the alleged victim, V.S., by touching her vagina "over her clothing" and "under her clothing, over her underwear." V.S. was under the age of 13 at the time of the acts alleged.

{¶ 3} The case proceeded to a jury trial on November 12, 2024, eliciting the following testimony pertinent to this appeal.

### B. Trial Testimony

#### 1. Shannon Hanrahan

{¶ 4} State's witness Shannon Hanrahan ("Hanrahan") testified that she worked for the Cuyahoga County Division of Children and Family Services ("CCDCFS") as a child protection specialist. She interviewed several individuals regarding alleged sexual abuse of V.S.

{¶ 5} Hanrahan interviewed V.S. twice. The State played videos of both interviews for the jury, and the court admitted these videos into evidence. Hanrahan testified that, during the first interview, V.S. claimed "that no one had touched her inappropriately." A video of the interview shows V.S. describe playing games with

Zolikoff and his daughter, A.Z. V.S. said that they played in the basement of the Zolikoff family's house ("the House"), at times with the lights off. They would sometimes pretend to sleep on mattresses in the basement. In the video, V.S. states that Zolikoff would hug her "goodnight" during these games. She denied that he touched her anywhere else on her body, including when Hanrahan asked about V.S.'s "private parts."

{¶ 6} Hanrahan interviewed V.S. again on March 3, 2023. A video of the interview shows V.S. state that Zolikoff had touched her "inappropriately" and "put . . . his hand on my privates." V.S. said that this occurred while A.Z., she, and Zolikoff played "sleep" or "family." V.S. also said that Zolikoff touched her both on top of her pants and on top of her underwear. Hanrahan testified that V.S. "pointed to her vagina," during the interview when discussing where Zolikoff touched her.

{¶ 7} On cross-examination, Hanrahan agreed that some of the questions she asked V.S. did not comport with her training. Hanrahan agreed that, at one point, she had asked V.S. multiple questions in a row without waiting for an answer. These questions concerned whether V.S. was scared. Hanrahan agreed that she had also asked V.S. multiple leading questions about where V.S. and Zolikoff had been in the House when he touched her.

### 2. Officer Dan Nutaitis

{¶ 8} State's witness Officer Dan Nutaitis ("Ofc. Nutaitis") testified that he was a patrolman for the Olmsted Township Police Department. Ofc. Nutaitis testified that, on February 22, 2023, V.S.'s father reported "[a] possible sexual

assault" of V.S. Ofc. Nutaitis "opened a claim" with CCDCFS using its child abuse phone hotline and provided information about the case to a detective "for follow-up."

### 3. Detective Howard Heathcoat

{¶ 9} State's witness Detective Howard Heathcoat ("Det. Heathcoat") testified that he investigated this case for the Olmsted Township Police Department. He was present for both of V.S.'s interviews and photographed the House, including the basement. His photos were admitted into evidence and depict a rock-climbing wall, "cargo nets" hanging from the ceiling, and mattresses on the floor beneath them.

### 4. J.S.

{¶ 10} State's witness J.S., V.S.'s mother, testified that V.S. was friends with A.Z. V.S. and A.Z. played together at the House, "[e]very day." J.S. had watched the girls play, but not at the House with Zolikoff.

{¶ 11} J.S. testified that, beginning in January 2023, V.S. stopped going to the House. J.S. testified that V.S. "would sleep a lot" and seemed "nervous, irritable." Around the same time, Zolikoff would "look the other way" around J.S.'s family and "would not say hi."

{¶ 12} In February 2023, J.S., V.S., and V.S.'s father attended a party at a bowling alley. Zolikoff was present. V.S. was "very tense" and "started crying."

{¶ 13} J.S. testified that she took V.S. to both of her interviews with Hanrahan. She brought V.S. back for a second interview because, during the first

interview, "she did not declare" what had happened. "She did not say it." J.S. did not tell V.S. what to say during her interviews but instructed her to tell the truth.

### 5. V.S.

{¶ 14} State's witness V.S. testified that she was 11 years old and had been nine when the alleged abuse occurred. She had been friends with Zolikoff's daughter, A.Z. V.S. and A.Z. had played together "[a]round every day," in the House's basement or in A.Z.'s bedroom. Zolikoff was present "fairly often." V.S. testified that she, A.Z., and Zolikoff played games, including "family" or "kitchen." Zolikoff let V.S. play "one or two" phone games that her parents did not let her play. He also occasionally bought her "toys," "like really small things," when they shopped with A.Z.

{¶ 15} Regarding whether Zolikoff touched her inappropriately, V.S. testified as follows:

Q:  Did anyone ever touch you on a private part?

A:  (Indicating).

Q:  Is that a yes?

A:  Yes.

Q:  And who did that?

A:  The dad.

Q:  And that would be Mark Zolikoff?

A:  Yes.

. . .

Q:  And if I used the word vagina, would that be the correct area?

A: Yes.

. . .

Q: How did he touch you?

A: His hands.

. . .

Q: And was that over the clothes, under the clothes . . .?

A: I'm not sure.

Q: Do you remember how many times it happened?

A: No.

Q: More than once?

A: Yes.

{¶ 16} V.S. testified that she "stopped going" to the House because Zolikoff continued touching her. Eventually, V.S. told her parents that Zolikoff had touched her inappropriately.

{¶ 17} V.S. testified about her interviews with Hanrahan. She did not disclose inappropriate touching during her first interview. She told her parents this was because the cameras in the interview room made her uncomfortable. V.S. testified that she told the truth in the second interview.

### 6. Isabella Zolikoff

{¶ 18} State's witness Isabella Zolikoff ("Isabella") testified that she was a college student and Defendant's 22-year-old daughter. Before trial, a CCDCFS social worker and a police officer interviewed Isabella. The State played a video recording

of the interview and questioned Isabella about statements therein. The State did not move for this video to be admitted into evidence.

{¶ 19} Isabella returned to the House during academic breaks. She had seen V.S. at the House but denied playing with her and Zolikoff in the basement. Isabella denied that Zolikoff would meet her at the basement door if she tried to go down the stairs. She admitted that she told the social worker and police officer that he had done this. Isabella denied that she had seen V.S. and Zolikoff touching. She had seen them lay in "proximity" "on opposite ends of the couch." Isabella admitted that she stated during her interview that she had seen V.S. put her head on Zolikoff's shoulder. Isabella attributed inconsistencies between her testimony and interview statements to her difficult relationship with her father, discomfort during the interview, mental-health issues, and misapplication of psychological concepts that she was studying in college around the time she was interviewed.

{¶ 20} Isabella also testified about Zolikoff's behavior around her friends. Some of these events occurred "like 14 years ago." Regarding whether Zolikoff had touched her friends, Isabella testified as follows:

Q: Do you remember any crossing of boundaries or lines that you witnessed as a child growing up from your father to your friends?

. . .

Q: So like touching, for instance. What you might consider a touch from your father to one of your friends that crossed a boundary or a line?

A: I did report that in my statement, yes.

{¶ 21} Isabella further testified, "I only had one friend that said . . . that [touching] happened between my dad and her." Isabella also observed an underaged girl sitting with Zolikoff and "her leg was on his thigh." "I didn't ask any questions. I left the room. I was uncomfortable." She denied having seen Zolikoff put his hand on one of her friend's "butts." Isabella admitted that, during her interview, she claimed that he had done this.

{¶ 22} Isabella testified about whether Zolikoff had played games with her friends during her childhood. Isabella stated that Zolikoff would "h[a]ng out downstairs in the basement" with them. He did not play "family." Isabella admitted telling the social worker and police officer that Zolikoff played other games with her and her friends. Isabella denied that these games "often" took place in the dark but said "there were occasions." She did not remember stating during her interview that "all the games were played in the dark" but testified, "If [the video] said that I said it, then yes, to them I said all the games were played in the dark." She testified that the rock wall in the basement was built around January 2023, after she was in college.

{¶ 23} Isabella testified about whether Zolikoff had given gifts to her friends. She explained that "my dad traveled a lot" and "would bring home gifts for me" and "I could give those out to my friends as needed or as wanted . . . ." At trial, Isabella initially did not recall that Zolikoff had purchased gifts for her friends without also doing so for her. She later acknowledged that this had happened.

{¶ 24} Isabella testified about whether Zolikoff had interacted with her friends by phone. She testified that Zolikoff did not have a Snapchat account "to [her] knowledge." She denied seeing a Snapchat conversation between Zolikoff and any of her friends but testified that "[a] friend told me about it." She admitted that she told the social worker and police officer that she had seen a Snapchat conversation between Zolikoff and a friend of hers.

### 7. Defendant

{¶ 25} Testifying in his own defense, Zolikoff described his relationship with Isabella. During Isabella's childhood, Zolikoff had worked for a "large . . . staffing firm" that required him to travel "very frequently," including to trade shows. He and Isabella "really had no bond because I wasn't around." Zolikoff gave Isabella and his other children gifts that he collected while traveling. These gifts included "a keychain from every state, every country that I went to" and items that he received at trade shows, including "shirts, keychains" and other "free stuff." He denied giving these items to friends of Isabella or friends of his other children.

{¶ 26} Zolikoff testified about his relationship with Isabella's friends. He did not recall taking Isabella and a friend to shop at Target. He also denied having a Snapchat account. Zolikoff interacted with Isabella's friends in the House's basement "if they needed help or needed something set up" but did not remember playing "family" or other games with them. He denied that he had allowed a friend of Isabella's to sit with her leg on his thigh. He also denied touching one of Isabella's friend's buttocks.

{¶ 27} Zolikoff also testified about his relationship with V.S. He denied playing "role-playing games" with her and A.Z. "[I]f they would ask me for help or ask me to set up a game or ask to play, then I may participate." He lent his cell phone to V.S. and A.Z. "[o]ccasionally." A.Z. had "one of our old phones" so that she could play "Roblox," a video game. If the children "want[ed] to play [Roblox] together, we may let them use one of our phones."

{¶ 28} Zolikoff testified about an incident regarding V.S.'s use of his cell phone that occurred in November 2022. V.S. and A.Z. asked Zolikoff to give them his phone so that they could use it to play Roblox. He gave the children his phone and ate dinner with his wife. Later, Zolikoff went to retrieve the phone. He "saw that [V.S.] had my phone in her hand" and "her other hand inside of her jeans." Zolikoff "grabbed the phone," which displayed "[t]wo women engaging in a sexual activity." He then told V.S. "to leave." V.S. "started crying, got up, and left quickly." Zolikoff and his wife did not "make a decision that [V.S.] could no longer play with [A.Z.]," but he "never saw [V.S.]" come back to the House. Zolikoff did not discuss this incident with V.S.'s parents.

{¶ 29} Regarding whether he touched V.S. inappropriately, Zolikoff testified as follows:

Q: [D]id you ever touch [V.S.]'s —

. . .

Q: — vagina?

A: No.

Q:  Did you ever touch her vagina on the outside of her clothes?

A:  No.

Q:  Did you ever touch her vagina over the underpants, but underneath her pants?

A:  No.

**C. After Trial**

{¶ 30} On November 15, 2024, the jury found Zolikoff guilty of both counts of gross sexual imposition.

{¶ 31} On November 19, 2024, the trial court sentenced Zolikoff to 48 months in prison on both counts of GSI, to run concurrently with each other for an aggregate prison term of 4 years.  The court also advised Zolikoff of his duty to register as a Tier II sex offender.

{¶ 32} Zolikoff appealed, raising the following assignments of error:

1. The trial court erred in permitting the video interviews of the alleged victim to be played to the jury and admitted into evidence.

2. The trial court erred in permitting hearsay testimony pursuant to Evid.R. 803(4).

3. The trial court erred in permitting 404(B) evidence.

## I.    Law and Analysis

{¶ 33} We begin and end our analysis with Zolikoff's third assignment of error, because it is dispositive of this case.  We render no opinion on Zolikoff's other assignments of error.

## A. Assignment of Error No. 3 — Admission of Isabella's Testimony About Zolikoff's "other acts" Violated Evid.R. 404(B)

{¶ 34} The trial court erred by admitting Isabella's testimony about Zolikoff's interactions with her friends. Isabella's testimony concerned Zolikoff's "other acts" under Evid.R. 404(B)(1) and was not admitted for a permissible purpose under Evid.R. 404(B)(2). Admission of her testimony affected Defendant's substantial rights under Crim.R. 52(A), requiring a new trial.

{¶ 35} "Evidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Evid.R. 404(B)(1). "[P]roof that the accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime." *State v. Hartman*, 2020-Ohio-4440, ¶ 20, quoting *State v. Curry*, 43 Ohio St.2d 66, 68 (1975).

{¶ 36} "Evid.R. 404(B) provides a nonexhaustive list of the permissible nonpropensity purposes for which other-acts evidence may be introduced." *Hartman* at ¶ 26. Such evidence may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid.R. 404(B)(2).

{¶ 37} "[I]t is 'not enough for the proponent of the other-act evidence simply to point to a purpose in the "permitted" list and assert that the other-act evidence is relevant to it.'" *Hartman* at ¶ 23, quoting *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (en banc) (applying Fed.R.Evid. 404(b), which is substantively

analogous to Ohio's Evid.R. 404(B)). "The rule is concerned not only with the ultimate justification for admitting the evidence but also 'with the chain of reasoning that supports the non-propensity purpose for admitting the evidence.'" *Id.*, quoting *id.* "To properly apply the rule, then, courts must scrutinize the proponent's logic to determine exactly how the evidence connects to a proper purpose without relying on any intermediate improper-character inferences." *Id.*, citing *id.*

{¶ 38} "The admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law." *Hartman*, 2020-Ohio-4440, at ¶ 22. "[C]ourts apply a de novo standard when reviewing issues of law." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 38. "'De novo review encompasses an independent examination of the record and law without deference to the underlying decision.'" *Torres v. Concrete Designs, Inc.*, 2019-Ohio-1342, ¶ 48 (8th Dist.), quoting *Gateway Consultants Group, Inc. v. Premier Physicians Ctrs., Inc.*, 2017-Ohio-1443, ¶ 22 (8th Dist.).

{¶ 39} Once a proponent of other-acts evidence has shown that the evidence is admissible, i.e. offered for a permissible purpose, "the trial court must determine whether the proffered evidence . . . is nevertheless more prejudicial than probative." *Hartman* at ¶ 29, citing *State v. Williams*, 2012-Ohio-5695, ¶ 20. Other-acts evidence is excluded when its probative value "'is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.'" *Hartman*, quoting Evid.R. 403(A). The trial court has discretion whether to admit other-acts evidence that is offered for a permissible purpose. *Id.* at ¶ 30.

{¶ 40} Evidence that a defendant "committed a prior sexual abuse 'is precisely the propensity inference that 404(B) forbids' in a subsequent sexual abuse case." *State v. Kramer-Kelly*, 2023-Ohio-1031, ¶ 75 (8th Dist.), quoting *Hartman* at ¶ 63. The defendant in *Hartman* was charged with rape. *Hartman* at ¶ 1. The trial court improperly admitted testimony that, four years prior, the defendant had molested his former stepdaughter. *Hartman* at ¶ 15, 18.

{¶ 41} Like *Hartman*, this case concerns sexual abuse allegations and testimony that Defendant had touched other children, years in the past. During the State's case-in-chief, Isabella testified about Zolikoff touching her friends. Some of these events occurred "like 14 years ago," before V.S. was born. A friend told Isabella that Zolikoff had touched her inappropriately. Isabella observed an underaged girl sitting with "her leg on [Zolikoff's] thigh," which made her "uncomfortable." Though at trial she did not recall seeing Zolikoff put his hand on one of her friend's "butts," she admitted that she told the social worker and police officer that this had happened.

{¶ 42} Isabella also testified regarding other aspects of Zolikoff's relationship with her friends. Zolikoff played games with Isabella's friends and gave them gifts. Isabella admitted that she reported during her interview that Zolikoff had interacted with her friends using social media.

{¶ 43} The State argues that Isabella's testimony was properly admitted for the purpose of showing preparation or plan, motive, or lack of mistake or accident, which Evid.R. 404(B)(2) allows. We disagree.

## 1. Isabella's Testimony was not Admissible for any Permissible Purpose Under Evid.R. 404(B)(2)

### a. Preparation or Plan

{¶ 44} Isabella's testimony was not admissible to show that Zolikoff prepared or planned to abuse V.S. Evidence is admissible for these purposes where defendant's "other acts are linked to the present crime because they are carried out in furtherance of the same overall plan." *Hartman*, 2020-Ohio-4440, at ¶ 40. "The other acts . . . are typically either part of the 'same transaction' as the crime for which the defendant is on trial or they are part of a 'sequence of events' leading up to the commission of the crime in question." (Citations omitted.) *Hartman* at ¶ 41. "A defendant's plan might be demonstrated through evidence of 'prior preparatory acts,' such as the prior theft of an instrumentality used in the commission of the current crime." (Citations omitted.) *Hartman* at ¶ 42.

{¶ 45} In *Hartman*, evidence that the defendant molested his stepdaughter was inadmissible to show preparation or plan to rape a different person. *Hartman* at ¶ 47. "[Defendant's] molestation of his stepdaughter four years prior was not linked to any overarching plan to commit rape against [the latter alleged victim]." *Id.*

{¶ 46} Similarly, Zolikoff's alleged touching of and close relationships with Isabella's friends did not further an overall scheme to abuse V.S. Nothing in the record shows that Zolikoff planned or prepared to develop a relationship with V.S. by spending time with Isabella's friends. V.S. was friends with A.Z., not with Isabella. The events Isabella described happened as many as 14 years prior to trial,

at which point V.S. had not been born. Isabella's testimony was not admissible to show that Zolikoff planned or prepared to abuse V.S. through relationships he had with Isabella's friends years before the acts for which he was convicted.[1]

### b. Motive

{¶ 47} Isabella's other-acts testimony was not admissible to show Zolikoff's purported motive to abuse V.S. "Motive evidence establishes that the accused had a specific reason to commit a crime." *Hartman*, 2020-Ohio-4440, at ¶ 48. "For instance, 'if the state argues that a defendant committed murder to cover up an earlier crime, evidence of that earlier crime may be admitted to show the motive behind the murder.'" *Id.*, quoting *State v. Cobia*, 2015-Ohio-331, ¶ 19 (1st Dist.).

{¶ 48} In *Hartman*, evidence that the defendant molested his stepdaughter was inadmissible to show motive. *Hartman* at ¶ 49. Defendant's prior "molestation of his . . . stepdaughter d[id] not reveal a specific reason for raping [the latter alleged victim] and thus d[id] not provide evidence of any motive to commit rape beyond that which can be inferred from the commission of any rape." *Id.*, citing *Curry*, 43

---

[1] The State does not argue that Isabella's testimony was admissible to show Zolikoff's modus operandi. However, noting that "preparation or plan" and "modus operandi" are often conflated, the *Hartman* Court analyzed both. *Hartman* at ¶ 40. Modus operandi evidence shows "shared characteristics" between acts "that make the conduct unique to the perpetrator." *Id.* The record does not demonstrate that Zolikoff employed a unique method of abuse against both Isabella's friends and V.S. Isabella denied that Zolikoff played "family" with her friends and did not testify that inappropriate touching of her friends resulted from playing games in the basement with Zolikoff. Her testimony also demonstrates that the climbing area — which included the mattresses on which Zolikoff allegedly laid with V.S. — was built after any alleged inappropriate conduct between Zolikoff and Isabella's friends.

Ohio St.2d at 71 ("A person commits or attempts to commit statutory rape for the obvious motive of sexual gratification. . . .").

{¶ 49} As in *Hartman*, evidence that Zolikoff touched and had close relationships with Isabella's friends showed no motive to abuse V.S. "beyond that implicit in the commission of the offense itself" — i.e., sexual arousal or gratification. *Hartman* at ¶ 50. *See* R.C. 2907.01(B) defining "sexual contact" for purposes of GSI as "touching of an erogenous zone of another . . . for the purposes of sexually arousing or gratifying either person." *See also State v. Tate*, 2013-Ohio-370, ¶ 18 (8th Dist.), quoting *State v. Astley*, 36 Ohio App.3d 247, 250 (10th Dist. 1987) (Sexual contact for purposes of GSI "'contemplate[s] any touching of the described areas'" in R.C. 2907.01(B), "'which a reasonable person would perceive as sexually stimulating or gratifying.'"). Isabella's testimony was not relevant to any specific reason Zolikoff had to engage in inappropriate conduct with V.S. other than that inherent to GSI. Her testimony was, therefore, inadmissible as evidence of Defendant's motive.

### c. Lack of Mistake or Accident

{¶ 50} Isabella's testimony was also inadmissible to show that Zolikoff's alleged abuse of V.S. was not a mistake or accident. "[A]bsence-of-mistake evidence is often closely linked to intent; to be probative of intent, such evidence must be sufficiently similar to the crime charged." *State v. Smith*, 2020-Ohio-4441, ¶ 45, citing *Hartman*, 2020-Ohio-4440, at ¶ 53. "The logical theory on which such

evidence is premised is that when circumstances arise often enough, it becomes substantially less likely that they have arisen by chance." *Id.*

{¶ 51} The Ohio Supreme Court has stated that, where a defendant admitted touching his daughter's buttock while giving her a backrub but denied doing so for the purpose of sexual gratification, "testimony from an older daughter that her father's backrubs were a pretext for sexual fondling was relevant to show that the defendant had touched his younger daughter for the purpose of sexual gratification." *Smith* at ¶ 46, discussing *State v. Schaim*, 65 Ohio St.3d 51 (1992).

{¶ 52} Similarly, in *Smith*, the Court compared defendant's alleged molestation of his granddaughter to testimony that he had previously molested his daughter, finding the latter admissible to show lack of mistake under Evid.R. 404(B). The Court found that the defendant's "relationship to the victims, the manner in which he touched them, the location and environment in which the abuse occurred, and his priming of the children by showing them pornography depicting oral sex — were so similar as to strongly suggest that an innocent explanation is implausible." (Cleaned up.) *Id.*

{¶ 53} By contrast, Zolikoff's behavior around Isabella's friends was not so similar to that alleged by V.S. that it is admissible to show that the latter conduct did not occur by mistake or accident. V.S. claimed that Zolikoff touched her in the basement while playing "family" or "sleep." Isabella denied that Zolikoff played this game with her and her friends. She did not testify that her friends playing games in the basement with Zolikoff led to inappropriate touching. She also testified that the

climbing area — which included the mattresses on which Zolikoff allegedly laid with V.S. — had been built in January 2023, after any alleged inappropriate conduct between Zolikoff and Isabella's friends.

{¶ 54} Further, the "nonpropensity purpose for which [other-acts] evidence is offered must go to a 'material' issue that is actually in dispute between the parties." *Hartman*, 2020-Ohio-4440, at ¶ 27, quoting *Huddleston v. United States*, 485 U.S. 681, 686 (1988). Intent is not a material issue for other-acts purposes unless it is genuinely disputed. *Hartman* at ¶ 55. "[I]ntent evidence is not admissible . . . when intent is not in issue at all, such as when the defense theory is that the act never occurred." *Id.*

{¶ 55} Zolikoff's intent to touch V.S. was not at issue. Zolikoff did not argue that he touched V.S.'s vagina by accident or mistake; rather, he testified that he had not done so at all. Isabella's testimony was, therefore, inadmissible to negate the possibility that Zolikoff had touched V.S. by mistake or accident. *See State v. Thompson*, 2020-Ohio-5257, ¶ 40 (8th Dist.) ("[Criminal defendant] did not claim that the harm done . . . was a result of a mistake or accident; thus, the other acts were not admissible to demonstrate intent.").

{¶ 56} The trial court erred by admitting Isabella's other-acts testimony, which served no permissible purpose under Evid.R. 404(B). Because we have determined that the other-acts evidence was inadmissible, we do not reach the question of whether the trial court abused its discretion in admitting the evidence pursuant to Evid.R. 403.

## 2. Admission of Isabella's Prejudicial Testimony Deprived Zolikoff of Substantial Rights Under Crim.R. 52(A)

{¶ 57} Having found that the trial court erred by admitting Isabella's other-acts testimony, we next determine whether doing so affected Zolikoff's substantial rights, requiring a new trial. We find that it did. Under Crim.R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." We decide whether erroneous admission of evidence affected a defendant's substantial rights and requires a new trial using the following test:

> "'First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt.'"

(Cleaned up.) *State v. Mills*, 2022-Ohio-4010, ¶ 68 (8th Dist.), quoting *State v. Harris*, 2015-Ohio-166, ¶ 37.

{¶ 58} "'[W]hile courts may determine prejudice in a number of ways and use language that may differ, . . . both the nature of the error and the prejudice to the defendant (the measure of how the error affected the verdict) are important.'" *State v. Jones*, 2023-Ohio-380, ¶ 141 (8th Dist.), quoting *State v. Morris*, 2014-Ohio-5052, ¶ 25, 33. "Error in the admission of evidence is harmless beyond a reasonable doubt when there is no reasonable possibility that the improperly admitted evidence contributed to the conviction." (Cleaned up.) *Lakewood v. Smith*, 2025-Ohio-2447, ¶ 16 (8th Dist.). *See State v. McKelton*, 2016-Ohio-5735, ¶ 192.

{¶ 59} "[T]he cases where imposition of harmless error is appropriate must involve either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction." (Cleaned up.) *Morris* at ¶ 29. The reviewing court's role in considering the remaining evidence "is not to sit as the supreme trier of fact, but rather to assess the impact of . . . erroneously admitted testimony on the jury." *Id.*

{¶ 60} This court has found the introduction of evidence that a defendant previously pled delinquent to gross sexual imposition to be prejudicial in a rape case. *In re C.T.*, 2013-Ohio-2458, ¶ 35 (8th Dist.) (vacating adjudication of delinquency for rape where court erred in admitting other-acts evidence under Evid.R. 404(B)). This court stated:

> Both parties in this case testified that sexual activity occurred. C.T. testified that K.W. consented. K.W. testified she did not. This is a classic "he said she said" case, and the entire case hinges on the parties' credibility. The admission of evidence showing C.T. had previously engaged in unconsented sexual conduct certainly tips the scales of credibility in favor of the prosecution's claim.

*Id.*

{¶ 61} We cannot say that there is no reasonable possibility that the improperly admitted evidence contributed to Zolikoff's conviction. Isabella testified that, during her childhood, she observed Zolikoff touch her friends and heard rumors that he had done the same. There is a reasonable possibility that Isabella's testimony contributed to Zolikoff's conviction here for similar conduct – touching a child. Again, nothing in the record indicates that Zolikoff's purported acts regarding

Isabella's friends showed his motive, preparation or plan, or lack of accident or mistake in relation to V.S.  Absent such purposes, the only inference the jury could have drawn from Isabella's testimony was that which Evid.R. 404(B) prohibits – that Zolikoff had a propensity to touch children improperly and likely did so here.

{¶ 62} As in *In re: C.T.*, this case was a "he said, she said" that turned on the jury's assessment of the complaining witness and the defendant.  Zolikoff denied that he touched V.S.'s vagina.  Isabella's erroneously admitted testimony that he had touched her friends likely damaged the jury's view of his credibility on that claim.

{¶ 63} A reasonable jury could have found that the State's case — less Isabella's testimony — did not prove Zolikoff's guilt beyond a reasonable doubt. V.S. denied that anyone had touched her inappropriately during her first interview, which was admitted into evidence.  None of the other State's witnesses testified that they had observed Zolikoff touch V.S.'s vagina.

{¶ 64} The State argues that Isabella's other-acts testimony was of limited prejudicial effect.  The State points out that the prosecution told the jury during closing arguments that the only purpose of this testimony was to show absence of mistake or accident and motive.  We do not agree.  The State's commentary did not cure the prejudicial impact of Isabella's testimony, and even a limiting instruction from the court might not have.  "In a case where the evidence is of a particularly inflammatory nature, a curative instruction may be insufficient to cure the prejudicial effect."  *Mills*, 2022-Ohio-4010, at ¶ 71 (8th Dist.), quoting *State v. Hernandez*, 2019-Ohio-5242, ¶ 37 (8th Dist.).  And regardless of the State's closing

argument, the court did not issue a limiting instruction concerning Isabella's other-acts testimony.

{¶ 65} Accordingly, Zolikoff's third assignment of error is sustained.[2]

{¶ 66} Because Isabella's other-acts testimony was admitted erroneously under Evid.R. 404(B) and affected Zolikoff's substantial rights under Crim.R. 52(A), Zolikoff is entitled to a new trial. On remand, the trial court may not permit Isabella to provide the other-acts testimony addressed above.

{¶ 67} Having sustained Zolikoff's third assignment of error, his other assignments of error are rendered moot, pursuant to App.R. 12(A)(1)(c).

{¶ 68} Judgment reversed, convictions and sentence vacated, and case remanded to the trial court for a new trial consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

---

[2] Having found that the court erred by admitting Isabella's testimony regarding Zolikoff's other acts, we decline to address Zolikoff's argument that the State failed to provide reasonable notice of intent to introduce other-acts evidence, which Evid.R. 404(B)(2)(a)-(c) requires.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

MARY J. BOYLE, J., and
DEENA R. CALABRESE, J., CONCUR